NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4621
_____

HUANG DONG LIN,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent.
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA-1:A098-718-073)
Immigration Judge: Honorable Eugene Pugliese
_____

Argued
April 15, 2011

Before: FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: May 18, 2011)
_____

Andy Wong   [ARGUED]
Eric Y. Zheng
401 Broadway - #404
New York, NY  10013
        *Counsel for Petitioner*

Aliza B. Alyeshmerni
Jeffrey Bernstein   [ARGUED]
Eric H. Holder, Jr.
Thomas W. Hussey
United States Dept. of Justice
Office of Immigration Litigation, Civil Div.
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Hong Dong Lin ("Lin") petitions for review of an order of the Board of

Immigration Appeals ("BIA") denying him asylum, withholding of removal, and

protection under the Convention Against Torture ("CAT").  Lin argues that his testimony,

which had been presumed credible for purposes of his appeal to the BIA, was alone

sufficient to establish his eligibility for relief.  He says the BIA thus erred by requiring

additional evidentiary support and questioning his credibility.  We agree that the BIA

erred in denying relief based on Lin's demeanor.  However, that error was harmless

because the BIA's decision is independently justified by Lin's failure to corroborate his

claimed fear of future persecution.  We will therefore deny his petition for review.

I.      **Background**

Lin is a Chinese citizen who arrived illegally in the United States in January 2005.

He was subsequently issued a Notice to Appear ("NTA") and was charged with

removability pursuant to § 212(a)(6)(A)(1) of the INA, 8 U.S.C. § 1182(a)(6)(A)(1)

2

(2005), as an alien in the United States without authorization. In May 2005, Lin, through counsel, admitted the factual allegations of the NTA.

Having conceded his removability, Lin sought asylum, withholding of removal, and protection under the CAT based on, *inter alia*, his religious beliefs, political opinion, and membership in a particular social group. The case centers on his arguments and evidence concerning his religious beliefs and Chinese policy towards unregistered churches.

At a June 2006 hearing before an IJ, Lin testified that on November 14, 2004, Chinese police stormed the church that he had recently joined, arrested the priest, and attempted to arrest him and the few others who were in attendance. He testified that he escaped the raid and later learned through his father's "ask[ing] around" that the church was an "underground church … [that] was illegal to attend," that seven people had been arrested that night, and that the police were tracking the people who had escaped the church, including himself. (AR at 407.) Lin further said that he cannot return to China because he left "without permission … when the police were still looking for [him]," that he would be arrested immediately and imprisoned upon his return because people "deported to China" are sentenced to jail for two or three months, and that "[b]eating and torture almost always occurs during detention." (*Id.*) He added that his father told him that the "police came to [his] home looking for [him] after [he] left China … [and] that the priest who was arrested at November 14 night, [was] still detained in jail." (*Id.*)

Lin also submitted the following: reports and articles regarding conditions in China; a letter dated March 29, 2005, noting his attendance at a church in New York; a

3

translation of a letter purportedly from his father, saying that the police had inquired as to Lin's whereabouts and that an "acquaintance, who … knows [Lin's] case, … [had said] that [Lin] would better not go home" because he would "be caught and put in the jail" (*id.* at 308); and a translation of a letter from someone claiming to be Lin's uncle stating that Lin had hidden at the uncle's house before leaving China.

At the end of the hearing, the Immigration Judge ("IJ") issued an oral decision denying Lin's application and ordering him removed to China. The IJ noted that "[t]he weaker the testimony, the greater the need for corroborative evidence," (*id.* at 229), and he said he found much of Lin's testimony to be "weak" because Lin's alleged fear of returning to China was based largely on hearsay, (*id.* at 229-30). The IJ also commented on the brevity and lack of specificity in the written statement Lin submitted with his application and on the fact that Lin had "never been persecuted in China, in terms of beatings, [or] punishment of any sort." (*Id.* at 232.) The IJ noted that the State Department's 2005 International Religious Freedom Report on China, which Lin put in evidence, indicated that unregistered "house churches" are permitted in China. (*Id.* at 233.) The IJ also said that Lin had not indicated why he desired to go to an unregistered church as opposed to an authorized Christian church and had also not demonstrated "any knowledge of Christianity whatsoever." (*Id.* at 231.) Further, the IJ found that the letters offered as corroboration seemed to be illegitimate and written "for the purpose of impressing a decision maker with the notion that [Lin] is wanted still in China and cannot return." (*Id.* at 236.) Considering the deficiencies in Lin's case, the IJ found that he had not met his burden of proof.

Lin appealed that decision to the BIA, which sent the case back to the IJ for an "explicit credibility finding." (*Id.* at 163.) The IJ conducted a hearing on remand and issued an oral decision incorporating the prior decision, but, remarkably, the IJ "declin[ed] to make a specific credibility finding." (*Id.* at 55.) The IJ reasoned that the absence of a credibility finding allowed the BIA to presume on appeal that Lin was credible, pursuant to the REAL ID Act. The IJ then added that, if the BIA read the REAL ID Act as not allowing that presumption, it should consider Lin credible. The IJ also noted that Lin had supplemented his earlier testimony with more detail about the church and his relationship with it, as well as information on why he did not want to attend a state-sponsored church. The IJ commented that the testimony regarding why Lin would not go to a sanctioned church if returned to China was not "particularly convincing" as it was brief and not given with emotion. (*Id.* at 57.) According to the IJ, that observation about Lin's demeanor was pertinent to "the question of burden of proof." (*Id.* at 58.)

The IJ next turned to the substance of Lin's claims and concluded that Lin's supplementation of earlier testimony with more detail about the church and why he did not want to attend a state-sponsored church in China was insufficient corroboration to carry Lin's burden of proof. The IJ observed that Lin had ignored the IJ's earlier-given "blueprint"[1] for appropriate corroboration.[2] (*Id.* at 59.) Specifically, the IJ found that

_____

[1] The "blueprint" evidently consists of the IJ's numerous references to the deficiencies of Lin's claim and evidence. (AR at 235.)

[2] The IJ's comment is particularly ironic since the IJ himself had just ignored the

5

Lin had failed to present corroborating evidence to overcome the suspicious nature of the letters supposedly sent by his uncle and father and had also failed to support his claims that he would be arrested or tortured because of his illegal departure from China. Concluding that the only question was Lin's risk of future persecution, the IJ again determined that Lin had not met his burden of proof and denied his application.

Lin appealed the IJ's second decision, and the BIA affirmed. "[P]resuming [Lin] was credible for the purposes of … appeal," the BIA concluded that Lin had "failed to present specific and probative evidence demonstrating eligibility for relief." (*Id.* at 2.) It noted that testimony alone could be sufficient to sustain Lin's claim if the testimony was "credible, persuasive, and refer[red] to specific facts sufficient to demonstrate that he is a refugee." (*Id.* at 3 (citing § 208(b)(1)(B)(ii) of the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B)(ii)).) But, the BIA went on to note that the REAL ID Act permits an IJ "to require corroborating evidence where it is reasonable to do so" and that there was therefore no basis upon which to reverse the IJ's findings. (AR at 3.) In particular, the BIA cited the IJ's comments questioning Lin's demeanor while testifying about church attendance. It also referred to Lin's failure to provide sufficient corroborating evidence for his claims and made note of the suspicious letters supposedly written by his uncle and father. Finally, the BIA held that Lin's "generalized and unsupported contentions regarding the Chinese government's interest in him [did] not satisfy his burden of proof for asylum." (*Id.*)

BIA's request for a credibility finding.

Lin has timely petitioned us for review of the BIA's decision.

## II.    Standard of Review[3]

Because the BIA not only adopted and affirmed the decision of the IJ but also provided additional reasoning for its decision, we review both the decision of the IJ and that of the BIA. *Hashmi v. Att'y Gen.*, 531 F.3d 256, 259 (3d Cir. 2008). Legal or constitutional questions are subject to *de novo* review. *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 405 (3d Cir. 2003). The BIA's determination that Lin is not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole" and is reversible only if the "evidence presented … was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). "When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning." *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003).

However, "remand … is not required when it would be an idle and useless formality." *Yuan v. Att'y Gen.,* --- F.3d ---, 2011 WL 1519200 at *5 (3d Cir. 2011) (internal quotation marks and citation omitted). For that reason, we apply a harmless

---

[3] The BIA had jurisdiction pursuant to 28 C.F.R. § 1003.1(b)(3)(2009). We have jurisdiction pursuant to 8 U.S.C. § 1252.

7

error analysis in the immigration context. *Id.* An error is harmless when "it is highly probable that the error did not affect the outcome of the case." *Id.*

## III. Discussion

In his petition, Lin challenges, among other things, the BIA's reliance on the IJ's conclusion that, when speaking about why he would not join a state-approved church, Lin lacked "emotion." Lin argues that, because the IJ accepted his testimony and because the BIA presumed him credible, the comment about his demeanor had no proper role in deciding his case. Any reliance on the comment is, he says, inconsistent with a positive credibility determination. Lin further argues that his credible testimony alone should have been sufficient to sustain his burden and that the BIA erred by reaching a contrary result based on a lack of corroborating evidence.

Like Lin, we find it difficult to square the BIA's questioning of his demeanor with its assertion that it was presuming him to be credible. Demeanor is an aspect of credibility, both logically and expressly under the REAL ID Act. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (a trier of fact may base its credibility determination on, among other things, "the *demeanor*, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, … the consistency of [the applicant or a witness's] statements with other evidence of record[,] … or any other relevant factor") (emphasis added). By presuming him credible, the BIA made Lin's demeanor a nonissue. If it had continuing doubts about his credibility, the BIA should have sent the case back to the IJ again – or to an IJ more inclined to comply with directions – to obtain

8

the credibility determination it had sought once already.  It was not in a position to weigh

credibility on its own.

That error, however, is harmless.  For Lin to receive any of the relief he seeks, he

must show that he is objectively entitled to it.[4]  While testimony alone may suffice to

show his eligibility,

> the trier of fact may weigh … credible testimony along with other evidence
> of record.  Where the trier of fact determines that the [asylum] applicant
> should provide evidence that corroborates otherwise credible testimony,
> such evidence must be provided unless the applicant does not have the
> evidence and cannot reasonably obtain the evidence.

---

[4] The grant of asylum is discretionary, and it is the applicant who bears the burden
of proof.  *He Chun Chen v. Ashcroft,* 376 F.3d 215, 223 (3d Cir. 2004).  Asylum
eligibility can be established by past persecution or a reasonable fear of future
persecution. *Myat Thu* v. *Att'y Gen.,* 510 F.3d 405, 412-13 (3d Cir. 2007).  To be granted
relief based on a fear of future persecution, an applicant must demonstrate "that she has a
genuine fear, and that a reasonable person in her circumstances would fear persecution if
returned to her native country." *Id.* at 413 (internal quotation marks omitted).  An
applicant's well-founded fear of future persecution must be both subjectively felt and
objectively reasonable. *Huang v. Att'y Gen.,* 620 F.3d 372, 381 (3d Cir. 2010).

To be eligible for withholding of removal, the applicant must establish a "clear
probability of persecution" upon removal. *I.N.S. v. Stevic*, 467 U.S. 407, 430 (1984).
Because the "clear probability" standard is a more rigorous standard than the "well-
founded fear" standard of asylum, an applicant who fails to establish a well-founded fear
of future persecution so as to be eligible for asylum necessarily fails to establish a right to
withholding of removal. *Zubeda v. Ashcroft,* 333 F.3d 463, 469-70 (3d Cir. 2003).

To be eligible for CAT relief, the applicant must "establish that it is more likely
than not that he or she would be tortured if removed to the proposed country of removal."
8 C.F.R. § 208.16(c)(2).  "Unlike establishing a reasonable fear of persecution for
asylum, [t]he standard for relief [under the Convention Against Torture] has no
subjective component, but instead requires the alien to establish, by objective evidence,
that he[/she] is entitled to relief." *Zubeda*, 333 F.3d at 471 (internal quotation marks
omitted) (alterations original).

8 U.S.C. § 1158(b)(1)(B)(ii). In short, "the BIA may … require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." *Abdulai v. Ashcroft,* 239 F.3d 542, 554 (3d Cir. 2001).

When it has been administratively determined that an applicant should provide corroborating evidence, the IJ or BIA must (1) identify the "facts for which 'it is reasonable to expect corroboration;'" (2) inquire "as to whether the applicant has provided information corroborating the relevant facts;" and, in the absence of such evidence, (3) determine "whether the applicant has adequately explained his or her failure to do so." *Id.* Put another way, requiring corroboration should follow notice as to what corroboration will be expected and an opportunity to present such evidence or, in the alternative, to explain the absence of it. *See Toure v. Att'y Gen.,* 443 F.3d 310, 324 (3d Cir. 2006) (remanding because the IJ failed to provide an applicant the opportunity to seek supporting evidence or to explain the lack of such evidence). We have held that "[i]t is reasonable to expect corroboration where the facts are central to the applicant's claim and easily subject to verification." *Chukwu v. Att'y Gen*., 484 F.3d 185, 192 (3d Cir. 2007). Moreover, by statute "[n]o Court shall reverse a determination by a trier of fact with respect to the availability of corroborating evidence … unless the court finds … that a reasonable trier of fact [would be] compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

Here, Lin was on notice that corroboration was required for facts central to his claims – the reasonableness of his fear of future persecution and the likelihood of torture. In the first decision in this case, which was incorporated by reference into the second

10

decision, the IJ strongly indicated that Lin should provide corroborating evidence because, among other things, much of his alleged fear of future persecution was based upon weak and questionable hearsay. The IJ thus put Lin on notice of the need for corroborating evidence. Specifically, Lin was on notice that he should try to provide evidence showing that the police had in fact arrested the pastor and congregants of Lin's church in China, that the police knew and were still looking for Lin, that his hometown or province was one in which unregistered religious gatherings and house churches would be disturbed, that the Chinese government punishes those who leave the country illegally, and that he had, in fact, left China illegally.

Lin also had an opportunity to gather and present such corroborating evidence. He had ample time between his 2006 and 2009 hearings to gather proof of an objectively reasonable fear of persecution. At the 2009 hearing, Lin had an opportunity to present such proof or explain its absence. Instead, he only provided limited evidence relating to his Christian beliefs and practices, rather than his fear of persecution.[5] Indeed, as the IJ

---

[5] Some of what he submitted cuts against his claims. The May 2007 State Department Report: Profiles of Asylum Claims and Country Conditions in China contradicts his contention regarding the imprisonment and abuse of persons "deported to China":

> The Chinese government accepts the repatriation of citizens who have entered other countries or territories illegally. In the past several years, hundreds of Chinese illegal immigrants have been returned from the United States, and U.S. Embassy officials have been in contact with scores of them. In most cases, returnees are detained for long enough once reaching China for relatives to arrange their travel home. Fines are rare. U.S. officials in China have not confirmed any cases of abuse of persons returned to China from the United States for illegal entry.

(AR at 120).

concluded, "everything that was a problem back in 2006 continue[d] to be a problem …

in terms of the corroboration." (AR at 59.) Lin also failed to show that such evidence

was unavailable. Accordingly, the BIA did not err in concluding, consistent with the IJ's

opinion, that Lin had "failed to submit sufficient corroborating evidence for his claim and

that such materials were reasonably available." (*Id.* at 3.)

Given Lin's failure to present corroborating evidence, the BIA also did not err in

deciding that his otherwise credible testimony was insufficient to show an entitlement to

relief.[6] Therefore, the BIA's determination that Lin is not eligible for asylum must be

upheld as "supported by reasonable, substantial, and probative evidence on the record

considered as a whole." *Elias-Zacarias*, 502 U.S. at 481 (internal quotation marks and

citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact

are conclusive unless any reasonable adjudicator would be compelled to conclude to the

contrary."). Because of his failure to establish asylum eligibility, Lin necessarily failed to

qualify for withholding of removal. *Zubeda,* 333 F.3d at 469-70. Further, the record as

a whole does not reveal that it is more likely than not that Lin will be tortured if returned

to China, therefore he was ineligible for CAT protection. *Kibinda v. Att'y Gen.,* 477 F.3d

113, 123 (3d Cir. 2007) (concluding that the petitioner was not eligible for CAT

protection because the evidentiary record as a whole did not reveal that torture would

more likely than not result if the petitioner were removed).

---

[6] Though Lin might have been believed as to his subjective fear of persecution, that fear could properly be held to be objectively unreasonable.

## IV. Conclusion

For the foregoing reasons, we will deny the petition.