NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3150
_____

CARMELINA LOPEZ-PEREZ
a/k/a Florida Perez-Lopez
a/k/a Carmelina Perez-Lopez,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

(BIA No. A078-976-128)
_____


_____

No. 10-3151
_____

D. L. P-L.,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

(BIA No. A088-038-641)
_____


Petitions for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
Immigration Judge: Honorable Andrew R. Arthur
_____

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2011

Before: RENDELL, JORDAN and BARRY, Circuit Judges.

(Opinion Filed: September 20, 2011)

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

In these consolidated petitions for review, Carmelina Lopez-Perez ("Lopez-Perez") and Dulce Lizbeth Perez-Lopez ("D.L."), mother and daughter and natives and citizens of Guatemala, petition for review of the BIA's denial of Lopez-Perez's application for withholding of removal and protection under the Convention Against Torture ("CAT") and D.L.'s application for asylum, withholding of removal, and CAT protection. We will deny the petitions for review.

**I.**

Carmelina Lopez-Perez and her daughter, D.L., are Guatemalan citizens who entered the United States without inspection in April 2008. Shortly thereafter, they were apprehended by immigration authorities, detained, and placed in joint custody. Removal proceedings were commenced against D.L. through service of a Notice to Appear ("NTA"). Lopez-Perez, however, was served with a Notice of Intent to reinstate a prior removal order, because authorities discovered she had previously been removed to

2

Guatemala after she applied for, and was denied, asylum in 2006.[1]  Because Lopez-Perez was subject to a prior removal order, she was only eligible to apply for withholding of removal and CAT protection, while her daughter was also eligible to apply for asylum.

At a September 2008 hearing, the petitioners' attorney and the immigration judge ("IJ") agreed that D.L.'s application for relief was a derivative of her mother's withholding application and, at a subsequent hearing, the IJ granted petitioners' attorney's request that D.L. and Lopez-Perez be able to proceed on the same I-589 form, rather than filing separate forms.

At the petitioners' merits hearing, Lopez-Perez was the only witness.  Her claim for withholding of removal was based on her alleged past persecution and fear of future persecution due to her membership in a particular social group—communal landowners of Ixchiguan, Guatemala.  According to Lopez-Perez's testimony, drug traffickers from the nearby town of Tajumulco sought to appropriate land owned by the villagers of Ixchiguan and threatened to kill the villagers if they did not surrender the land.  These tensions prompted Lopez-Perez to leave Guatemala in 1999.  When she returned in 2007 following her initial removal from the U.S., the situation had deteriorated.  Lopez-Perez testified that the Tajumulcoans had appropriated much of the land in her village, that many of the houses were empty, and that the people were armed.  The Guatemalan army had a unit stationed near Ixchiguan to protect it from raids and to train people to defend

---

[1] Lopez-Perez first entered the United States in December 1999, and remained here until she was removed in January 2007.

3

themselves and, in 2006, the Guatemalan government had issued a state of emergency for the San Marcos area in which Ixchiguan is located.

Lopez-Perez testified that, upon returning in 2007, she relocated to Tuichan, where she was involved in two confrontations with the Tajumulcoans while she was patrolling the village at night as part of a neighborhood security effort. In the first, the Tajumulcoans threatened to rape and kill the women of Tuichan if they did not evacuate the land. Lopez-Perez fell while running away from the Tajumulcoans but was passed over by them and unharmed. In the second, the armed Tajumulcoans again threatened the villagers, and Lopez-Perez injured her leg while hiding from them underneath a cliff. During both incidents, the army responded to the villagers' calls for help, and the Tajumulcoans left when the army arrived.

Lopez-Perez claimed that, in March 2008, the Tajumulcoans' threats became personal. She received three telephone calls in which the callers demanded money they thought Lopez-Perez brought to Guatemala from the U.S. The third caller told her that if she did not comply with their demands within twenty-four hours, she and her daughter would be raped and killed. She believed the callers were from Tajumulco, though she conceded that the callers did not identify themselves. She chose not to report the calls to the police, she said, because the drug traffickers had killed policemen in the past. The next morning she and D.L. departed for the U.S. Her father and her sisters stayed in Tuichan and still reside there today.

According to Lopez-Perez, she did not move to another region of Guatemala because she does not know other areas, does not have family in them, and speaks an

4

indigenous language that, although it is not spoken in other areas, would signal to others that she is from San Marcos.

## II.

The immigration judge ("IJ") denied all of petitioners' applications in an oral decision on November 28, 2008. He stated that, while it was unclear whether the incidents Lopez-Perez described established past persecution,[2] she failed to prove that the alleged persecution was on account of a protected ground—her membership in a particular social group. There was no evidence, he said, that the social group identified by Lopez-Perez—communal landowners—is targeted by anyone when those landowners are not physically in Ixchiguan and that the confrontation appears to be over a specific parcel of land rather than directed at the landowners. The IJ further commented that, even if Lopez-Perez could establish persecution on account of her membership in a particular social group, the persecution was not carried out by a group that the government was unable or unwilling to control, as demonstrated by the army's responsiveness when the Tuichan villagers called for help. In addition, the IJ found that Lopez-Perez was unable to demonstrate any future risk of persecution on account of a protected ground, noting again that the dispute seemed to be over specific land, that her father and sisters continued to reside in Tuichan, and that she could relocate within Guatemala without difficulty.

---

[2] With regard to the allegedly threatening phone calls, the IJ found that these did not amount to past persecution; the calls were intended to obtain money from Lopez-Perez through criminal extortion, which is not the same as persecution.

5

Regarding D.L.'s alleged past persecution, the IJ stated that the child had not been harmed. Though the telephone calls implicated her, this did not amount to past persecution or support petitioners' contention that she had a well-founded fear of future persecution. Further, D.L. had a safe place to stay in Guatemala—with her grandmother in San Marcos, where she had stayed in 2007 when the Tajumulcoans were attacking her village. Accordingly, he denied her requests for asylum and withholding of removal.

The IJ also dismissed petitioners' application for CAT protection, finding that the petitioners' presented no evidence that the Government would be inclined to harm Lopez-Perez or her daughter were they removed to Guatemala.

The BIA dismissed the petitioners' appeals in separate decisions. As to Lopez-Perez, it determined that the IJ's findings of fact were not clearly erroneous and affirmed and adopted the IJ's legal conclusions, agreeing with the IJ that Lopez-Perez could not establish past persecution,[3] that she did not face persecution on account of her status as a landowner, and that she did not establish a clear probability of future persecution.[4] The BIA also adopted and affirmed the IJ's legal conclusions as to D.L.'s appeal, noting in the process that D.L.'s claim was derived from her mother's.

### III.

---

[3] Although the IJ noted at the outset of its analysis that "it is not entirely clear" whether Lopez-Perez suffered past persecution, its finding that the alleged persecution was not carried out by forces that the government is unable or unwilling to control amounts to a holding that Lopez-Perez could not establish past persecution. *See Toure v. Att'y Gen.*, 443 F.3d 310, 316-17 (3d Cir. 2006).

[4] In its decision on Lopez-Perez's appeal, the BIA erroneously stated that she was applying for asylum. Because she had previously been removed from the country, she was not actually eligible for, and did not apply for, asylum.

We have jurisdiction over Lopez-Perez and D.L.'s petitions pursuant to 8 U.S.C. § 1252(a). When the BIA substantially adopts the findings of the IJ, as it did here, we review both decisions. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We uphold the Board's determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting the version of 8 U.S.C. § 1105a(a)(4) then in effect). We review factual findings, including adverse credibility determinations, under the substantial evidence standard. *Butt v. Gonzales,* 429 F.3d 430, 433 (3d Cir. 2005). We will only find substantial evidence lacking where the evidence "was so compelling that no reasonable factfinder could fail to find" the alien eligible for asylum or withholding of removal. *Elias-Zacarias*, 502 U.S. at 483-84; *see also Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005). Because Lopez-Perez's brief does not challenge the BIA's denial of her CAT claim, we will limit our review to the agency's denial of D.L.'s asylum claim and Lopez-Perez's claim for withholding of removal. *Voci v. Gonzales*, 409 F.3d 607, 610 n.1 (3d Cir. 2005).

Petitioners argue that, in denying those claims, the IJ erred in three primary ways. First, they argue, the IJ failed to make a separate determination of the merits of D.L.'s asylum application. Second, the IJ erred in finding that Lopez-Perez had not shown past persecution by a group that the government was unable or unwilling to control. Third, the IJ erred in holding that Lopez-Perez was not part of a cognizable social group, and the BIA erred in affirming and adopting this erroneous legal conclusion.

As the Government itself concedes, the IJ did err in allowing D.L. to proceed as a rider on her mother's application for withholding of removal. He should have required D.L. to file a separate asylum application. *Compare* 8 U.S.C. § 1158(b)(3) (authorizing derivative asylum claims) *with id.* § 1231(b)(3) (not providing derivative withholding of removal). *See Arif v. Mukasey*, 509 F.3d 677, 681-82 (5th Cir. 2007) (agreeing with the BIA that there are no derivative beneficiaries for an application for withholding of removal).

However, we agree with the Government that this was harmless error. *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) ("We . . . are persuaded that harmless error analysis should apply in immigration cases."). Under *Yuan*, an error is harmless and does "not necessitat[e] a remand to the BIA when it is highly probable that the error did not affect the outcome of the case." *Id.* Here, while it is true that the standard for asylum is lower than for withholding of removal,[5] and D.L.'s application would have been considered under that standard if she had filed separately, D.L. still would not have prevailed in setting forth an independent claim of past persecution or fear of future persecution, as is required for an asylum claim. *See Valdiviezo-Galdamez v. Att'y Gen.*, 502 F.3d 285, 288 (3d Cir. 2007) (an applicant for asylum possesses the burden of demonstrating his entitlement to relief as a "refugee" by establishing that he is "'unable or unwilling to return to, and is unable or unwilling to avail himself or herself of

---

[5] *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 348-49 (3d Cir. 2008) ("The standard for a claim of withholding of removal under INA § 241(b)(3) is higher than the standard for asylum. As with asylum, [the p]etitioner must show that any persecution is on account of a protected ground, but in addition, she must show that such persecution is 'more likely than not' to occur." (citation omitted)).

the protection of, [her country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" (quoting 8 U.S.C. § 1101(a)(42))). None of the evidence set forth in petitioners' joint proceedings establishes that D.L. was endangered in Guatemala. She was residing safely with her grandmother in San Marcos when the Tajumulcoans attempted to take over the Ixchiguan villagers' land. There is also no evidence in the record suggesting that D.L. would face harm or persecution on account of a protected ground were she to return to Guatemala. Thus, we hold that the IJ's failure to require D.L. to file a separate asylum application, while erroneous, was harmless.

Next, we turn to petitioners' challenge to the IJ's and BIA's conclusions that petitioners failed to establish past persecution and that they are not members of a cognizable social group. As we noted above, Lopez-Perez is only eligible for withholding of removal and CAT relief, and her challenges to the BIA's dismissal of her petition for review—other than her claim that D.L.'s application should have been handled separately—appear to address her withholding claim, rather than her daughter's asylum claim.

To meet the stringent standard for withholding of removal, an applicant must establish a "clear probability" that she will be persecuted on a protected ground if returned to her native country. *See Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004); *see also* 8 U.S.C. § 1231(b)(3). An alien meets that standard by establishing that she has been persecuted in the past, which creates a rebuttable presumption of future persecution,

or by showing that it is more likely than not that she will be persecuted in the future. *See Kaita v. Att'y Gen.*, 522 F.3d 288, 296 (3d Cir. 2008).

"[P]ersecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003) (quoting *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Persecution does not include "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional," *id.*, nor do "isolated incidents that do not result in serious injury . . . rise to the level of persecution." *Voci*, 409 F.3d at 615. Further, persecution must be "committed by the government or by forces that the government is either unable or unwilling to control." *Toure*, 443 F.3d at 316-17 (internal quotation marks omitted).

Here, Lopez-Perez asserts that the two incidents in which she fled from the Tajumulcoans—first, when she fell and was run over and, second, when she hid safely under a small cliff—establish past persecution at their hands. These events were isolated violent incidents that did not result in serious injury, not threats to life or torture so severe as to rise to the level of past persecution. *See Voci*, 409 F.3d at 615. Moreover, the IJ and the BIA are correct that Lopez-Perez fails to prove that the alleged persecution she suffered was committed by the government or a group the government was unwilling or unable to control. Lopez-Perez testified that on the two occasions the Tajumulcoans attacked Ixchiguan, the Guatemalan army came to the villagers' defense and successfully deterred the aggressors. The IJ also recognized in his decision that the Guatemalan government had taken substantial steps to prosecute a Tajumulcoan drug trafficker.

10

Lopez-Perez argues that the government's protection was inadequate because the soldiers were not authorized to kill. However, what is required is an ability and willingness to control, not an ability and willingness to use deadly force. *See Valdiviezo-Galdamez*, 502 F.3d at 288-89. Here, the army's presence was sufficient to deter the Tajumulcoans; each time, the attacks ceased after the army arrived.

In support of her past persecution claim, Lopez-Perez also points to the allegedly threatening phone calls she received, arguing that they prompted her to leave Guatemala out of fear for her life. However, threats, "standing alone . . . [,] constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005) (internal quotation marks omitted). Moreover, criminal activity by private actors does not constitute persecution. *See Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) ("The assaults experienced by [petitioner] . . . at the hands of two different sets of assailants could represent random street violence, motivated not by animosity against a particular ethnic group, but rather by arbitrary hostility or by a desire to reap financial rewards. Such ordinary criminal activity does not rise to the level of persecution . . . ."); *cf. Singh v. I.N.S.*, 134 F.3d 962, 967 (9th Cir. 1998) ("Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum . . . ."). Here, as Lopez-Perez attested, her anonymous callers threatened her because they wanted money they believed she brought back from the U.S. She provided neither evidence of the callers'

11

identity nor of any motivation the callers had besides a desire for financial gain through criminal extortion. As we said in *Abdille,* "arbitrary hostility" or "a desire to reap financial awards" does not rise to the level of prosecution. 242 F.3d at 494.

Further, in contending that the phone calls establish past persecution, Lopez-Perez again fails to show that the government was unwilling or unable to control the individuals who made the threats. She admitted in her testimony that she did not report the calls to the police at all, and while she claims the reason for this is that the callers had killed police officers in the past, she presents no evidence in support of that contention. Moreover, it is impossible for her to establish that the callers killed police officers in the past when she cannot identify who the callers are. Accordingly, we will affirm the BIA's determination that Lopez-Perez failed to demonstrate past persecution.[6]

We also agree with the IJ and the BIA that, even if Lopez-Perez were able to establish past persecution, she still does not have a viable claim for withholding of

---

[6] Because Lopez-Perez cannot establish past persecution, in order to prevail on her withholding claim, she would have to show that it is more likely than not that she will be persecuted in the future. *Kaita*, 522 F.3d at 296. She does not explicitly make this argument on appeal but, even if she did, it would fail as the evidence she relies on does not establish a risk of future harm on account of a protected ground by a group that the government is unable or unwilling to control. In addition, the fact that Lopez-Perez's father and sisters have continued to safely reside in Ixchiguan undermines her fear of future persecution, *see Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001) (an "applicant's claim of persecution upon return is weakened, even undercut, when similarly-situated family members continue to live in the country without incident"), *superseded on other grounds by* Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (codified as amended at 8 U.S.C. § 1252(a)(2)(D)), *as recognized in Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (*per curiam*), as does evidence that she was able to stay in San Marcos in 1999 without facing harm from the Tajumulcoans and that, upon returning to Guatemala, she could relocate to another area of Guatemala with relative ease, the alleged language barrier notwithstanding.

12

removal because she is unable to prove that the persecution is on account of her membership in a particular social group.

Even if Lopez-Perez were a member of legally cognizable "particular social group," a question we need not reach,[7] she still cannot prove the requisite nexus between the harm she allegedly suffered and a protected ground. She cannot establish, as 8 U.S.C. § 1101(a)(42)(A) requires, that she was persecuted *on account of* her membership in a particular social group. The IJ reasonably concluded that the Tajumulcoans were interested in the land, not the residents, of Ixchigua, and, thus, that Lopez-Perez's membership in the group of landowners did not motivate her alleged mistreatment at the hands of the Tajumulcoans. Accordingly, we will affirm the BIA's holding that, because there is no nexus between the actions of the Tajumulcoans and Lopez-Perez's membership in a particular social group, her claim for withholding of removal cannot succeed.

## IV.

For the reasons set forth above, we will deny Lopez-Perez and D.L.'s consolidated petitions for review.

---

[7] "[A] particular social group refers to 'a group of persons all of whom share a common, immutable characteristic.'" *Fatin v. I.N.S.*, 12 F.3d 1233, 1239 (3d Cir. 1993) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). Alternatively, a "particular social group" can consist of "those who possess a characteristic that is capable of being changed but is of such fundamental importance that individuals should not be required to modify it, e.g., religion." *Escobar v. Gonzales*, 417 F.3d 363, 367 (3d Cir. 2005).

13