**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4061
_____

LEONARDO APARENTE ARAGONCILLO;
CYNTHIA TALAG ARAGONCILLO;
THERESA MARGA  TALAG ARAGONCILLO;
ANGELO BENEDICTO TALAG ARAGONCILLO,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A094-824-675, A094-824-676, A094-824-677, A094-813-605)
Immigration Judge:  Honorable Margaret R. Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 19, 2012
Before:  AMBRO, JORDAN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 08, 2013)
_____

OPINION
_____

PER CURIAM

Leonardo Aragoncillo, with his wife and two of his children,[1] petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying their motion to remand and dismissing their appeal of the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

I.

Aragoncillo is a Philippine citizen who, with his wife and two of his children, entered the United States as visitors in November 2005, and remained longer than permitted. He claims that he was persecuted for imputed political opinion due to his brother's 2005 arrest by the FBI for espionage. Aragoncillo's brother, a former Marine and FBI analyst, was discovered to have been passing classified information to the political opposition in the Philippines in order to overthrow the then-president of the Philippines, Gloria Arroyo.

At his removal proceedings, Aragoncillo testified that his sister, who lives in the United States, called him on September 11, 2005, to inform him of their brother's arrest. Starting the following day, the Philippine media began reporting the arrest and the media swarmed Aragoncillo's house for the next two weeks. During this time, Aragoncillo and his wife took voluntary leaves of absence from their jobs, did not stay at their house, and their children did not attend school on a regular basis. While neither Aragoncillo nor his

---

[1] For the sake of clarity and because Aragoncillo's wife's and children's claims for relief were predicated on the same issues as his, we refer to Aragoncillo individually throughout this opinion.

family received any direct threats, he was contacted by Philippine Congressman Albano and Senator Lacson, both of whom who had received information from his brother. Aragoncillo turned down Congressman Albano's request for a meeting because he was frightened of him and his "private army." Senator Lacson sought to arrange an interview with Aragoncillo and the national press, but Aragoncillo turned this meeting down as well because he perceived it as a threat. Aragoncillo testified that he did not seek police protection because he believed that they would be "against him."

Aragoncillo and his family decided to come to the United States in November 2005 on the advice of his brother. They made their flight arrangements through a travel agency, and the government did not attempt to stop them from leaving. Aragoncillo did, however, make sure that their flight departed early Saturday morning, when the government officers would be less alert. Several of Aragoncillo's family members remain in the Philippines, including three of his five children and his sister-in-law. He believes that these family members have not been harmed because they are on "his brother's side."

Aragoncillo's brother pleaded guilty to the charges against him in May 2006. At that time, the recipients of the classified information were identified. Although charges have not been filed against these people, Aragoncillo believes that this is only because justice moves slowly in the Philippines. He remains fearful of returning to the Philippines because he believes that President Arroyo and his brother's co-conspirators would take revenge against him due to his brother's activities.

Aragoncillo and his family were admitted to the United States as visitors, and conceded removability for remaining longer than permitted. They submitted applications for asylum, withholding of removal, and relief under CAT. The Immigration Judge ("IJ") found that although Aragoncillo testified credibly and his fear of returning to the Philippines was genuinely held, he did not meet his burden of demonstrating an objectively reasonable fear of persecution upon return. Accordingly, the IJ denied relief, and Aragoncillo appealed to the BIA.

The BIA agreed with the IJ's determinations and dismissed his appeal in October 2011. The BIA also noted that Aragoncillo had submitted additional evidence in support of his appeal indicating that two of his relatives were attacked in 2009, and one of them was killed. The BIA declined to consider this new evidence for the first time on appeal, and noted that even if it was to construe the submission as a motion to remand, it would be denied as the evidence offered would not have changed the outcome of the case. Specifically, the BIA noted that the police report stated that the attack appeared to be a hold-up and that there was no indication that the attack was related to the 2005 incident. Aragoncillo now petitions this Court for review.

II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). However, "[s]ection 1252(d) of the Immigration and Nationality Act provides that the courts of appeals 'may review a final order of removal only if . . . the alien has exhausted all

4

administrative remedies available to the alien as of right.'" Hoxha v. Holder, 559 F.3d 157, 159 (3d Cir. 2009) (quoting 8 U.S.C. § 1252(d)(1)). "[I]ssue exhaustion as required by § 1252(d)(1) is a jurisdictional rule." Id. at 159 n.3 (citing Lin v. Att'y Gen., 543 F.3d 114, 120 n.6 (3d Cir. 2008)). Thus, an alien must "raise or exhaust his or her remedies as to each claim or ground for relief [before the BIA] if he or she is to preserve the right of judicial review of that claim." Id. at 159 (citing Abdulrahman v. Ashcroft, 330 F.3d 587, 595 (3d Cir. 2003)). Here, Aragoncillo raised only two issues on appeal to the BIA: (1) that the IJ erred when she found that he failed to demonstrate that his fear of persecution upon return to the Philippines was objectively reasonable and well-founded, and (2) that the IJ erred when she found that he failed to establish that the mistreatment he feared he would suffer was on account of race, religion, nationality, membership in a particular social group, or political opinion. Aragoncillo additionally submitted new evidence on appeal to the BIA, which treated it as an implied motion to remand. Accordingly, to the extent Aragoncillo now seeks to challenge other aspects of the agency's decisions, those claims are unexhausted and beyond our jurisdiction. See Hoxha, 559 F.3d at 159 n.3.

We review factual findings under a substantial evidence standard. See Sandie v. Att'y Gen., 562 F.3d 246, 251 (3d Cir. 2009). Under that standard, we must uphold the BIA's decision unless the evidence not only supports a contrary conclusion, but compels it. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). We review the BIA's conclusions of law de novo. Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). We

5

review the BIA's decision to deny a motion to remand for abuse of discretion. Korytnyuk v. Ashcroft, 396 F.3d 272, 285 (3d Cir. 2005).

There are two questions presently before us: (1) whether substantial evidence supports the BIA's determination that Aragoncillo was ineligible for relief because he failed to establish that he would be persecuted upon his return to the Philippines, and (2) whether the BIA abused its discretion by rejecting the implied motion to remand to present new evidence.

An applicant bears the burden of proving eligibility for asylum. Shardar v. Att'y Gen., 503 F.3d 308, 312 (3d Cir. 2007). The applicant must demonstrate that he or she "'is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Id. (quoting 8 U.S.C. § 1101(a)(42)(A)). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003) (quoting Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001) (citation omitted)).

In an asylum case predicated on the fear of future persecution, the agency must answer three essential questions: (1) what may happen if the alien returns to his home country, (2) whether those events constitute persecution, and (3) whether the possibility

of those events occurring gives rise to a well-founded fear of persecution. Huang v. Att'y General, 620 F.3d 372, 383 (3d Cir. 2010). The first question involves factual determinations, and the second question is solely an issue of law. Id. The final question requires a determination of both what is reasonably likely to occur when the alien is repatriated—a question of fact—as well as whether the predicted events would cause a reasonable person in the alien's situation to fear persecution—a question of law. Id. at 384.

As to this final question, all are in agreement that Aragoncillo testified credibly and that his subjective fear of returning to the Philippines was genuine. However, Aragoncillo was never personally harmed or threatened in the Philippines, his family remains there unmolested by the government, and he has not demonstrated that a pattern or practice of persecution exists against people who oppose the current government. Accordingly, the BIA determined that Aragoncillo did not demonstrate that he would actually be persecuted if returned to the Philippines. We are not compelled to disagree.[2]

---

[2] We agree with the Government that Aragoncillo has waived any claim that he has suffered past persecution because he has not raised the issue in his brief before this Court. See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (holding that an issue is waived unless party raises it in opening brief). In any event, we discern no error in the BIA's determination that the phone calls from Senator Lacson and Congressman Albano did not constitute past persecution. See, e.g., Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (observing that "[a]busive treatment and harassment, while always deplorable, may not rise to the level of persecution"); Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993) (explaining that persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive"). Moreover, because the BIA's determination that Aragoncillo failed to establish that he is likely to be persecuted upon return to the Philippines is supported by the record, we need

7

See Toure v. Att'y Gen., 443 F.3d 310, 319 (3d Cir. 2006) (noting that "[g]enerally, evidence of similarly-situated family members' continued presence in the country where the persecution allegedly occurred is more probative of whether the petitioner will suffer persecution if he were returned to his home country than whether he suffered persecution in the past."). We discern no error in the BIA's determination that Aragoncillo was ineligible for asylum. Because Aragoncillo did not meet the criteria for asylum, we also agree that he was unable to meet the higher standards applicable to applications for withholding of removal and CAT protection. See Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008) (withholding of removal); Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008) (CAT relief).

B.

In August 2009, Aragoncillo's cousin was shot and his wife was killed. Aragoncillo argued that he and his cousin were very close with his brother, and that "[a]lthough the criminal complaint indicates the motive of the [attack] as attempted robbery," he believes that his cousin and his wife had been targeted because of their relationship to Aragoncillo's brother. A.R. 19. That belief was apparently based upon the fact that extra-judicial killings are often made to appear as ordinary crime along with a witness's identification of the shooters as members of the Guardians Brotherhood, Inc., a group Aragoncillo avers is comprised of alumni of the Philippine Military Academy.

not address his arguments regarding whether any possible mistreatment would occur on account of his race, religion, nationality, membership in a particular social group, or political opinion.

8

Evidence of this attack was submitted for the first time on appeal, and the BIA correctly declined to consider it. See 8 C.F.R. § 1003.1(d)(3)(iv). The BIA also noted that if the submission were construed as a motion to remand, it would be denied. "The BIA treats a motion to remand for the purpose of submitting additional evidence in the same manner as motions to reopen the record." Huang, 620 F.3d at 389. Accordingly, the BIA may deny the motion if: "(1) the alien has not established a prima facie case for the relief sought; (2) the alien 'has not introduced previously unavailable, material evidence'; or (3) in the case of discretionary relief (such as asylum), the alien would not be entitled to relief even if the motion was granted." Caushi v. Att'y Gen., 436 F.3d 220, 231 (3d Cir. 2006) (quoting INS v. Abudu, 485 U.S. 94, 104 (1988)). Here, the BIA concluded that "there is no indication that the attack was related to the 2005 arrest of the lead respondent's brother," A.R. 5, and that a remand would not have changed the outcome of the case.

Aragoncillo argues that the BIA did not review the evidence in its entirety because it relied specifically on his cousin's sworn statement indicating that the shooting appeared to be a hold-up. We disagree. Aragoncillo's cousin's statement provided ample basis to reject the motion to remand; there was no need for the Board to expound in detail on the remaining evidence. Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) ("The Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims.") (citation and internal quotation

9

marks omitted).[3] We are not compelled to disagree with the BIA's conclusion, and cannot hold that the implied denial of the motion to remand was an abuse of discretion.

IV.

For the foregoing reasons, we deny the petition for review of the decision of the Board of Immigration Appeals.

---

[3] Even assuming, arguendo, that the attack was perpetrated by members of the Guardians Brotherhood, Inc., the conclusion that the attack took place at the behest of the Philippine government or was otherwise connected to Aragoncillo's brother's arrest is purely speculative. Thus, even if, as Aragoncillo argues, the BIA erred in relying on his cousin's statement, that error was harmless and remand to the BIA would be inappropriate. Li Hua Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) ("[W]e will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case.").