PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1082
_____

LI HUA YUAN, A/K/A SHU CHEN HSU
ZHOUGUI NI,
                        Petitioners,


v.


ATTORNEY GENERAL OF THE UNITED STATES,
                        Respondent
_____


On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A077-997-645 and BIA 1:A088-777-224)
Immigration Judge: Honorable Frederic Leeds
_____


Submitted Under Third Circuit LAR 34.1(a)
April 14, 2011

Before:   FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: April 22, 2011 )
_____

Gary J. Yerman, Esq.
Yerman & Associates
401 Broadway - #1210
New York, NY   10013
        *Counsel for Petitioners*

Dalin R. Holyoak, Esq.
Kevin J. Conway, Esq.
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC   10044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Li Hua Yuan petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Her husband, Zhuo Gui Ni, joins her petition on a derivative basis. For the following reasons, we will deny the petition.

## I.    Background

Yuan, a native and citizen of China, arrived in the United States in February 2002 and attempted to gain entry using a non-immigrant visa issued to her under a false name. Shortly thereafter, in a secondary inspection, Yuan told an immigration officer that she was single, from Nantang Wan Li Village, Lian Jiang District, Fuzhou City, Fujian Province, China, and that she had fled China because her impoverished parents were forcing her to marry a man in exchange for money. The next month, in March 2002, the Department of Homeland Security ("DHS") issued Yuan a Notice to Appear ("NTA"), charging her with being inadmissible for lack of proper documentation in violation of the Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and for fraudulently or willfully misrepresenting a material fact – namely her identity – to gain entry to the United States in violation of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

In July 2002, Yuan filed an application for asylum and withholding of removal.[1] She identified two bases for asylum: the impending forced marriage in China and the punishment she would receive from the Chinese government for being a practitioner of Falun Gong. In October 2003, after hearing Yuan's testimony, an Immigration Judge ("IJ") sustained DHS's charge of inadmissibility for lack of proper documentation and denied Yuan's application, finding that

---

[1] Yuan's application does not clearly indicate that she was seeking relief under the CAT. She was nevertheless treated as having sought CAT relief.

she was not credible and, in any case, had not shown that she satisfied the requirements for asylum, withholding of removal, or protection under the CAT.[2] In April 2005, the BIA denied Yuan's appeal without opinion.

Yuan timely moved to reopen her removal proceedings in July 2005 and attached a new asylum application. In her new application, Yuan claimed that she and Ni had given birth to a daughter in December 2004, that they were planning to have additional children, and that she "fear[ed] that if she is sent back to China, she [would] lose the chance to have as many children as she likes" due to Fujian Province's birth control policy, which, in Yuan's case, would permit no more than two children.[3] (*See* App. 2 at 1066.) In September 2005, the BIA denied the motion to reopen, concluding that, since Yuan's one child did not put her in contravention of the policy and Yuan had presented no evidence that China sterilizes its citizens for having foreign-born children, Yuan had failed to show a well-founded fear of persecution in China.

Yuan again moved to reopen in May 2007. She also attached to her motion an amended version of her July 2005 asylum application, which included documentation indicating that she had given birth to a second daughter and documents regarding enforcement of China's birth control policy. In September 2007, the BIA granted the motion to reopen. The

---

[2] The IJ did not address the fraud charge under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

[3] The policy allegedly permitted a second child, if the first child was female.

4

BIA explained that, since Yuan was seeking to reapply for asylum and withholding of removal based on changed circumstances in China, the motion fell within the timeliness and numerical limits exception under 8 C.F.R. § 1003.2(c)(3)(ii).[4] The BIA further explained that, since the authenticity of Yuan's family planning policy documents had not been resolved, it was appropriate to remand Yuan's case to an IJ to "hold additional hearings to address the authenticity of the evidence presented with the motion, … [Yuan]'s credibility, and her eligibility for asylum, withholding of removal, and protection under the CAT."[5] (App. 2 at 911.)

---

[4] As we have previously explained, the birth of children in the United States is a change in personal circumstances, not a change in conditions in China. *Liu v. Att'y Gen. of the U.S.*, 555 F.3d 145, 148 (3d Cir. 2009). Thus, the BIA's analysis should have focused on whether Yuan had presented evidence that was previously unavailable or undiscoverable since her last hearing. *See id.* (commending the BIA for focusing on availability of evidence). However, that issue, which would have arisen from the motion to reopen, is not before us now.

[5] At about this time in the chronology of events, May 2008, DHS issued an NTA to Ni, charging him with removal under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), because he was allegedly a native and citizen of China who had entered the United States without having been admitted or paroled by an immigration officer. Ni filed his own asylum application, claiming that he had married Yuan in January 2008, that they together had two daughters, and that either he or Yuan would be forcibly sterilized by the Chinese

5

In advance of Yuan's post-remand hearing, Yuan and DHS submitted several documents to the IJ, including information on China's birth control policies and, from Yuan, various affidavits, letters, statements, and certificates in support of her claims. The IJ delayed the proceedings several times so that Yuan or DHS could satisfy authentication concerns about Yuan's documents, but neither party was able to do so. DHS objected to much of Yuan's documentary evidence, noting that several items were copies instead of originals and lacked appropriate corroboration and authentication. The IJ ultimately admitted Yuan's documents but noted that the "legitimate issues" raised with respect to their authenticity could affect their evidentiary weight. (*Id.* at 184-86.)

After dealing with those preliminary questions, the IJ conducted a hearing in May 2009, at which Yuan testified. Yuan said that she was born in China's Fujian Province, met

government if they returned. At a hearing held approximately two weeks later, Ni admitted the allegations in the NTA and conceded that he was removable as charged. Shortly thereafter, the IJ granted Ni and Yuan's motion to consolidate their cases. Ni later withdrew his claims for withholding of removal and CAT protection – his asylum application was not filed within one year of entering the United States and so was untimely under INA § 208 (a)(2)(B), 8 U.S.C. § 1158(a)(2)(B) – and proceeded on a derivative basis on Yuan's application. Accordingly, we address only Yuan's claims, even though the determination with respect to Yuan applies with equal force to Ni.

6

and married Ni after she came to the United States in February 2002, and gave birth here to two daughters. She testified that, if returned to China, she would be sterilized or fined under her home village's birth control policy because she had two children and was still a citizen of China. She claimed that she learned of her home village's birth control policy from a letter sent by her father, who, at her request, had approached the village committee to inquire regarding the policy. Yuan also submitted documents purportedly recounting the experiences of persons who had been subject to enforcement of birth control in China: one was a letter from someone allegedly named Yang Yun Duan, a neighbor in Yuan's village, in which Duan claimed to have been subject to forced contraception after the birth of her first child and forced sterilization after the birth of her second child; the others included statements from Jin Fu Chen, whose wife had given birth to two children in Japan and who was allegedly sterilized upon return to China, and Yanyun Wu, who was allegedly fined and sterilized for fathering a second child in China after having already fathered a son.

Yuan further testified that she would be fined 30,000 to 50,000 Renminbi ("RMB"), which, under the then-prevailing exchange rate of 6 RMB to 1 dollar, equated to a fine ranging from $5,000 to $8,333. She claimed that she would be unable to pay such a fine if returned to China, since she would stay at home with the children and Ni would probably earn an estimated 400 to 500 RMB per month as a construction worker. Yuan said that, though she was not then working in the United States, she had earned $10,000 per year working part-time in a restaurant and that Ni also worked in a restaurant, giving them a combined annual income of $25,000. She also said that she had been able to repay the

7

$40,000 she owed to the smugglers who brought her to the United States only because her wages were higher in the United States than in China.

Yuan's claim for relief was undercut, however, by several evidentiary deficiencies and contradictions. For instance, she failed to produce her father's letter explaining the village family planning policy, including the fine schedule. The letter from her neighbor Duan gave as the neighbor's name "Yunrui Yang" rather than "Yang Yun Duan," as Yuan had claimed, and it was not authenticated. Neither was there authentication for the documentation concerning others who submitted statements on Yuan's behalf. When asked why she made no mention of a fine in her asylum application after having testified at the hearing about it being of paramount importance, Yuan testified that she forgot about it. Yuan could not explain the discrepancy between her testimony of a 30,000 to 50,000 RMB fine and the Duan letter, which mentioned only a 15,000 RMB fine. Yuan produced no tax returns to corroborate her testimony regarding her and Ni's household earnings. She testified that both of her children had traveled with their aunt to China, where they then lived for a number of years with Ni's mother and sister and were temporarily registered as part of Ni's mother's household without any family member being fined or otherwise disadvantaged. She also testified that she and Ni would reside in the town of Guantao and be registered as part of Ni's household if they returned to China, but she failed to produce any evidence of a Guantao birth control policy. And though Yuan testified that she planned to have more children and had been trying to conceive for the past two years, she had not consulted with a physician to confirm whether she is able to have more children.

Following Yuan's testimony, the IJ issued an oral decision finding Yuan removable and denying her asylum, withholding of removal, or relief under the CAT. The IJ analyzed Yuan's asylum claim under pre-REAL ID Act standards because Yuan had filed her original claim prior to the REAL ID Act's enactment in 2005, though the IJ noted that his conclusion about the case would be the same under post-REAL ID Act standards.[6] The IJ credited the State Department Report and Profile on China, which indicated that China did not have a policy of forcible sterilization or fines for Chinese nationals who simply return to China after having given birth abroad to two or more children.[7] The IJ gave less

---

[6] The REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, 302 (2005), which became effective on May 11, 2005, provides that an asylum applicant's uncorroborated testimony may alone satisfy his burden of proof "if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). In evaluating the testimony, the trier of fact may weigh it along with other record evidence and may request that the applicant provide corroborating evidence, which the applicant must do unless he "does not have the evidence and cannot reasonably obtain [it]." *Id.* The REAL ID Act further provides that the trier of fact may determine an applicant's credibility based on a variety of factors. *Id.* § 1158(b)(1)(B)(iii).

[7] As the IJ noted, the State Department Report and Profile did indicate some problems for parents attempting to obtain free public services for children born abroad, but it

9

weight to Yuan's evidence and observed that the village committee documentation and other letters regarding forced sterilization and fines were neither authenticated nor directly applicable to someone whose children were born in the United States and that Yuan knew of no similarly situated person who had been subject to sterilization or fines. As for the purported potential fine, the IJ found that Yuan's claimed fear was not credible, noting, *inter alia*, the discrepancy between Yuan's testimony and Duan's letter about the amount of a fine, Yuan's failing to corroborate the amount of the fine or her inability to pay, the children having lived in China with Ni's mother without fines or difficulty, and Yuan's failing to even mention the fine in her application for relief. The IJ ultimately concluded that Yuan had not met her burden of proof with respect to her asylum, withholding of removal, and CAT protection claims.

Yuan then looked to the BIA, but the BIA dismissed her appeal. It disagreed with the IJ regarding the applicability of the REAL ID Act, concluding that the asylum application attached to Yuan's 2007 motion to reopen asserted a new basis for relief and was thus a new application subject to the REAL ID Act. However, "upon … *de novo* review," (App. 2 at 3), the BIA agreed with the IJ that Yuan had failed to prove that she was entitled to relief. The BIA identified several deficiencies in Yuan's evidence, including that much of it was either stale, unrelated to birth control policies in Fujian province, or contradicted by background materials and thus

---

also indicated that parents could avoid those problems by paying for services and not registering their children with the government.

did not reflect current conditions in Guantao. It noted that Yuan had established only that fines are sometimes imposed in Guantao, not that she would be fined 30,000 to 50,000 RMB or that she would be unable to pay such a fine, and it indicated that her evidence of forced sterilization – *i.e.*, the materials from Duan, Chen, Wu, and Yuan's home village – was not "credible, individualized evidence establishing that she has reason to fear persecution upon return," because it was either inapposite or unauthenticated. Having failed in her efforts before the BIA, Yuan now petitions us for review.

## II.    Discussion[8]

We "review the administrative record on which the final removal order is based." *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). Ordinarily, that means reviewing only the BIA's decision. *Id.* However, where the BIA's decision affirms and specifically references the IJ's decision, we review the referenced portions of the IJ's decision also. *Sandie v. Att'y Gen. of the U.S.*, 562 F.3d 246, 250 (3d Cir. 2009); *Lin v. Att'y Gen. of the U.S.*, 543 F.3d 114, 119 (3d Cir. 2008). Since the BIA's decision here references the IJ's determinations with respect to Yuan's failures to establish eligibility for CAT protection and to corroborate her testimony regarding fine amounts, we review those portions of the IJ's decision along with the BIA's decision. Our review of factual findings, including findings of persecution and fear of persecution, is for substantial evidence, which

---

[8] The BIA had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction pursuant to 8 U.S.C. § 1252.

11

means we must uphold findings of fact unless the record evidence compels a contrary finding. *Sandie*, 562 F.3d at 251. We review legal conclusions *de novo*. *Id.*

In her petition, Yuan argues that the BIA erred in assessing the sufficiency of her evidence and in engaging in *de novo* review of the IJ's factual findings. We address those issues in turn.[9]

---

[9] Yuan also takes issue with the BIA's conclusion that her current asylum application is a new application filed after May 2005 and so is subject to the REAL ID Act. Whether the REAL ID Act applies can be significant because it imposes certain conditions upon asylum applicants regarding credibility and corroborating evidence. *See* supra note 6 (outlining 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii)). Yuan argues that the REAL ID Act should not apply because the current application is merely a continuation of her initial application filed in July 2002 and so predates the REAL ID Act. We disagree and instead, for the reasons the BIA set forth, conclude that Yuan's application raises a new basis for asylum following a motion to reopen and so is a new application rather than a continuation of the initial one, which had raised different bases for asylum and had been dismissed.

In any event, Yuan's concern is of no moment. First, the BIA expressly declined to address Yuan's credibility. Thus, even if Yuan could have been subject to the REAL ID Act's credibility provision, as a practical matter, she was not. Second, to the extent that Yuan was subject to the REAL ID Act's corroboration provision, it was effectively indistinguishable from what she would have been subject to under pre-REAL ID Act law, since under both regimes the

### A. The Sufficiency of Yuan's Evidence

"To qualify for asylum or withholding of removal, an applicant must establish that he has a well-founded fear that he will be persecuted if removed to his home country on account of [, among other things,] … political opinion." *Zheng v. Att'y Gen. of the U.S.*, 549 F.3d 260, 266 (3d Cir. 2008). "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or undergo involuntary sterilization] or [is] subject to persecution for [failure, refusal, or resistance to undergo such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion." *Id.* (quoting 8 U.S.C. § 1101(a)(42)) (internal quotation marks omitted). To receive asylum on account of a fear of forced sterilization, the applicant must show "a reasonable likelihood" that he or she will be forcibly sterilized upon repatriation. *Id.* To receive withholding of removal on that same basis, the applicant must make the similar but heightened showing that there is a "clear probability" of being forcibly sterilized upon return. *Id.* (internal quotation marks omitted).

---

trier of fact could require Yuan to produce reasonable corroborating evidence and penalize her for failing to produce such corroboration or failing to adequately explain the failures. *See Abdulai v. Ashcroft*, 239 F.3d 542, 552-54 (3d Cir. 2001) (holding that the BIA's interpretation of the INA to permit the trier of fact to "sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof" was reasonable).

13

Here, the BIA concluded that Yuan had not met her burden of showing that she was reasonably likely to be forcibly sterilized upon return to China. The BIA cited several evidentiary bases for its conclusion, including that the evidence proffered on birth control policies was stale or was irrelevant. Without recounting again all of the BIA's reasons, we note that it decided that she had failed to show she would be unable to pay any potential fine, and that her evidence of forcible sterilization was either inapposite or unauthenticated. Substantial evidence supports the BIA's conclusion and thus its decision that Yuan is not entitled to asylum.

We also uphold the BIA's denial of withholding of removal and CAT protection. An applicant that fails to meet the eligibility requirements for asylum cannot "meet the more stringent applicable standard for withholding of removal," *Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94, 102 n.8 (3d Cir. 2006), as was the case here. Likewise, the evidence that is here insufficient to show eligibility for asylum and withholding of removal is also insufficient to show eligibility for CAT protection, since it does not show that Yuan is more likely than not to be tortured upon return to China. *See* 8 C.F.R. § 1208.16(c)(2) (an alien must show that it is more likely than not that he would be tortured, with the consent or acquiescence of the government, if repatriated).

### B. The BIA's De Novo Review and Harmless Error

The BIA affirmed the IJ's decision "upon … *de novo* review." (App. at 3.) Yuan argues that that was error, since, pursuant to 8 C.F.R. § 1003.1(d)(3)(i), the BIA is "not to engage in *de novo* review" of the IJ's factual findings.[10] The government effectively concedes the error but counters that such error was harmless, since the denial of relief was still supported by substantial evidence.[11]

---

[10] "Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings … are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i).

[11] In stating that it affirmed the IJ's decision "upon … *de novo* review," (App. 2 at 3), the BIA did not clearly indicate that it specifically reviewed *de novo* the IJ's factual findings. That is potentially significant, since the BIA is permitted to review *de novo* "questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges," 8 C.F.R. § 1003.1(d)(3)(ii), and the BIA could be understood as referring to those aspects of its review, which would not make its review erroneous. However, it appears likely that the BIA did review *de novo* the IJ's factual findings, given that it found additional, alternative bases upon which to discount Yuan's evidence. Alternative findings are incongruent with clear error review, in which we would expect the BIA to limit its discussion to whether the IJ clearly erred in its factual findings. Accordingly, we take it as a given, as do the parties, that the

15

We have not applied the harmless error analysis in reviewing an immigration decision. Generally, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943). However, the Supreme Court has explained that "*Chenery* does not require that [the Court] convert judicial review of agency action into a ping-pong game" and that remand to the agency is not required when it "would be an idle and useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *see also Mass. Trustees of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 246-48 (1964) (holding remand unnecessary when the agency's purported error "had no bearing on … the substance of the decision").

Consistent with those principles, many of our sister circuits have applied a harmless error analysis in the immigration context. *See, e.g., Nadal-Ginard v. Holder*, 558 F.3d 61, 69 n.7 (1st Cir. 2009) (noting that it need not reach the BIA's alternative rationale for its decision, since, even if erroneous, it did not result in prejudice and so was effectively harmless error); *Kadia v. Gonzales*, 501 F.3d 817, 821 (7th Cir. 2007) (acknowledging that "the doctrine of harmless error is applicable to judicial review of immigration decisions"); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005) (citing *Wyman-Gordon* and *Massachusetts Trustees* and holding that remand to the BIA was not required "where there [was] no realistic possibility

BIA reviewed *de novo* the IJ's factual findings.

16

that, absent the errors, the IJ or BIA would have reached a different conclusion"); *Ngarurih v. Ashcroft*, 371 F.3d 182, 191 n.8 (4th Cir. 2004) ("Harmless-error analysis applies in immigration cases."); *Nazaraghaie v. INS*, 102 F.3d 460, 465 (10th Cir. 1996) (characterizing the BIA's alleged failure to consider certain record evidence as harmless error since "the result in [the] case would be no different" if the case were remanded).

We too are persuaded that harmless error analysis should apply in immigration cases. Accordingly, we will view an error as harmless and not necessitating a remand to the BIA when it is highly probable that the error did not affect the outcome of the case. *Cf. Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005) (stating in the civil context that "[a]n error will be deemed harmless only if it is 'highly probable' that the error did not affect the outcome of the case"); *Cao He Lin*, 428 F.3d at 402 (stating that remand is not required "where the IJ or BIA's reliance on an erroneous aspect of its reasoning is so tangential that there is no realistic possibility that the outcome would be different on remand" or "where – notwithstanding admitted errors – overwhelming evidence supporting the administrative adjudicator's findings makes it clear that the same decision would have been reached in the absence of the errors").

Applying that test here, we have no hesitation in saying that the BIA's erroneous *de novo* review of the IJ's factual findings was harmless. As an initial matter, because the IJ had made factual findings adverse to Yuan, *de novo* review, which paid no deference to those adverse findings, was, if anything, favorable for Yuan. Indeed, the BIA's decision to deny Yuan relief is a product of the most

17

favorable standard of review Yuan could have received under the circumstances. Moreover, nothing in the BIA's decision manifests a disagreement with the IJ's factual findings. On the contrary, the BIA echoed and adopted several of them. Accordingly, it is highly probable that the outcome of Yuan's case would not have been different had the BIA applied the proper standard of review and paid deference to the IJ's adverse findings. The BIA's error in conducting a *de novo* review thus does not necessitate remand.

## III.    Conclusion

For the foregoing reasons, we will deny the petition for review.