**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1977
_____

UFUQ ABROR,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-649-515)
Immigration Judge:  Honorable Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2012
Before:  SLOVITER, CHAGARES and GREENBERG, Circuit Judges

(Opinion filed: October 18, 2012)
_____

OPINION
_____

PER CURIAM

        Ufuq Abror petitions for review of the denial of his applications for asylum,

withholding of removal, and protection under the United Nations Convention Against

Torture (CAT).  We will deny the petition.

Abror, who is Muslim and a native and citizen of Indonesia, entered the United States in 2005. In 2008, he was charged with removability under 8 U.S.C. § 1227(a)(1)(C)(i) (failure to maintain nonimmigrant status), and in response applied for asylum and related relief. He claimed to fear likely discrimination and persecution in Indonesia arising from disapproval over his relationship with Dhany Rinastuti, a Muslim Javanese woman,[1] and the presence of their children, who were born out of wedlock. Administrative Record (A.R.) 338. He explained that he is a member of the Madurese ethnic group, and implied that the interracial relationship greatly upset Rinastuti's parents; her father struck him once with a broom in 2005 after encountering him with their daughter. A.R. 179–80. Abror worried, too, that the problem of wedlock would not easily be solved, as he believed that Indonesian law prohibited marriage without parental consent. A.R. 180.

The presiding Immigration Judge (IJ) recognized that Abror's situation warranted sympathy—"you have a young couple who are in love; however, because of differences in ethnicity, the parents on each side are upset that they are in a relationship," A.R. 131— but nevertheless denied his application for relief. The IJ first observed that Abror's asylum application was filed more than one year after his arrival, and was thus untimely. A.R. 127. Second, she found that the broom incident was "the only incident of harm suffered by the respondent in Indonesia," and was an insufficient ground upon which to

---

[1] Ms. Rinastuti is the petitioner in C.A. No. 12-1978, a companion case.

base a finding of past persecution. A.R. 129–30. The IJ also observed that the laws cited by Abror did not clearly state that parents would *always* have veto power over marriages, nor did Abror show that the parents would actually be antagonistic to the couple, especially after the birth of grandchildren and in light of the fact that Rinastuti spoke to her mother every month or so without incident. A.R. 129–30. Finally, if marriage laws were as Abror understood them to be, the problem of wedlock could be simply solved by getting married in the United States. A.R. 133. The IJ therefore denied relief, and her opinion was adopted by the Board of Immigration Appeals (BIA). A.R. 3. Abror then sought review from this Court.

When, as here, "the BIA affirms an IJ's decision without opinion," we have jurisdiction under 8 U.S.C. § 1252 to "review the IJ's decision as the final agency determination." Konan v. Att'y Gen., 432 F.3d 497, 500 (3d Cir. 2005). Our review is limited, however, to the withholding and CAT elements of Abror's petition; we lack jurisdiction to address whether Abror's asylum application was timely filed. See 8 U.S.C. § 1158(a)(3). "Our review of factual findings, including findings of persecution and fear of persecution, is for substantial evidence, which means we must uphold findings of fact unless the record evidence compels a contrary finding." Yuan v. Att'y Gen., 642 F.3d 420, 425 (3d Cir. 2011).

Limiting our review to those claims exhausted before the agency, see 8 U.S.C.

3

§ 1252(d)(1), we detect one primary claim: the IJ erred by misconstruing the scope of Indonesia's wedding laws and the possible persecution flowing from "the refusal of the Indonesian state to recognize his marriage to a woman of another ethnic group." A.R. 12; accord Pet'r's Br. 11–12.[2] We cannot agree with this argument. While Abror maintains that the IJ's reading of the relevant law was suspect, he has provided nothing to support his contrary understanding of the law's meaning; like the IJ, we have no expertise in Indonesian domestic and family law, and cannot say that the IJ's interpretation is incorrect without any affirmative evidence to the contrary. Abdille v. Ashcroft, 242 F.3d 477, 489 n.10 (3d Cir. 2001) ("In general, foreign law is treated as a fact that must be proven by the parties."). Moreover, it is not enough for Abror to suggest that the law *could* be used to persecute him. Instead, in order to obtain withholding of removal, he must show that there is a "clear probability" of persecution.[3] Garcia v. Att'y Gen., 665

---

[2] The Government argues that Abror failed to exhaust this claim, but we believe that the presentation before the BIA was sufficient to grant us jurisdiction over it. See 8 U.S.C. § 1252(d)(1). We cannot, however, say the same for Abror's argument that the IJ "ignored" evidence in the record, which the IJ plainly did not do in any event.

Abror also asserts that denial of marriage "could" constitute persecution, though he develops no actual argument in that regard. We will nevertheless assume for the purposes of this petition that the denial of permission to marry based on ethno-racial grounds could constitute persecution under certain circumstances.

[3] The record also reveals an ambiguity in the actual nature of the law, which serves to underscore the necessity of clarifying these matters before the agency. Abror refers to the excerpts contained in the record as portions of Indonesia's "constitution." See, e.g., Pet'r's Br. 11. Similar references were made before the agency. See, e.g., A.R. 181. The exhibit list, however, refers to the material as "Indonesian Law and/or Ordinance,"

F.3d 496, 502 (3d Cir. 2011). As the IJ found, Abror has not made such a showing; nor, for that matter, has he demonstrated that any persecution would be committed by the Indonesian government or forces beyond its control. Id. at 503. His concerns regarding parental interference and community disapproval are completely speculative, and nothing in the record would compel us to vacate the IJ's decision. While the country reports reveal that those attempting to enter into religious (not racial) intermarriages can encounter difficulty becoming registered, a common solution is the one identified by the IJ: marriage elsewhere followed by registration at the Indonesian Embassy. See A.R. 271.

For the foregoing reasons, Abror's petition for review will be denied.

---

A.R. 345, and the title of the statutes seems to be "The Law Concerning Marriage." A.R. 347. In other words, our "preliminary investigation," see Abdille, 242 F.3d at 489 n.10, suggests that these laws may not be part of Indonesia's constitutional framework. See also The Law of the Republic of Indonesia: Number 1 of the Year 1974—On Marriage, reprinted in Institute of Southeast Asian Studies, Shari'a and Politics in Modern Indonesia app 1, at 235 (Arskal Salim and Azyumardi Azra eds., 2003). Our decision today does not rest on this distinction. But were the IJ's misapplication of Indonesian law to be as central to this case as Abror now claims, it would certainly be incumbent upon him to explain, in greater depth, the source and function of the law.

5