**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2483
_____

FRANCIS G. FERNANDES,
aka Francis Gilbert Fernandes,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-023-854)
Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 2013
Before:  HARDIMAN, NYGAARD and ROTH, Circuit Judges

(Opinion filed: November 18, 2013)
_____

OPINION
_____

PER CURIAM

Francis G. Fernandes, a native and citizen of India, attempted to enter the United

States using a fraudulent visa in March 2010.  The Government charged him with

removability under 8 U.S.C. § 1182(a)(6)(A)(i) (for being present in the United States

without being admitted or paroled) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (for not being in possession of a valid entry document at the time of admission). Fernandes conceded removability, and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming persecution based on his religion (Catholic) and his political opinion (affiliated with the Congress and Republican Parties of India). An Immigration Judge ("IJ") denied him relief from removal, and the Board of Immigration Appeals ("BIA") dismissed Fernandes's subsequent appeal. Fernandes presents a petition for review of the BIA's decision.

We have jurisdiction over Fernandes's petition pursuant to 8 U.S.C. § 1252(a)(1). We consider questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2001). We review the agency's factual findings, including its conclusions concerning evidence of past persecution and a well-founded fear of persecution, for substantial evidence. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Under this deferential standard of review, we may not disturb the agency's findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

To obtain asylum, an alien must show that he is unable or unwilling to return to the country in question "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); see 8 U.S.C. § 1158(b). Upon review, we conclude

that the agency did not err in concluding that Fernandes did not make the required showing.

During his testimony before the IJ, which the IJ ruled credible, Fernandes described several incidents that occurred in 2008 and 2009. After Fernandes ran as a candidate for the Republican Party, members of the Sri Ram Sena (SRS) group, whose primary objective is to make India an entirely Hindu state,[1] made a series of threatening phone calls that went on for about three weeks. Believing the threats to be serious, he sent his family to live with relatives in a different town, but he remained in his hometown of Shirva unharmed. Shortly thereafter, when Fernandes was on his way home after selling a cow (at a time when beef consumption was locally banned), he was approached, threatened, and slapped by SRS members. He also described an incident that occurred in September 2008, but which did not involve him directly. Several churches were attacked and a number of individuals were killed in Mangalore, India (a city approximately 30 miles from Fernandes's hometown). At that time, his church requested security, which local police provided. Later that month, members of his church held a peace rally. Fernandes claimed that about a week later, when he was coming home from church, he was approached by four individuals from the SRS who threatened him to adopt their culture, with one putting a knife to Fernandes's throat. Fernandes pushed away the man

---

[1] Sri Ram Sena is associated with the Bharatiya Janata Party, one of the major political parties in India.

holding the knife and escaped; however, when he turned away, his cheek came in contact with the knife blade and he received a cut (which did not require stitches).  In January 2009, two SRS members accosted him when he was on his motorbike about two kilometers from his house.  Joined by three others, they accused him of being a foreigner (because of the color of eyes), and one of the men swung a large tube light at him and bloodied his lip.  He was able to escape, but he needed three stitches for the wound.  The final incident happened in May 2009, when he was riding his bicycle to the market and an unidentified person threw a bottle of acid (marked with the letters "SS") at him.  He was mildly hurt, but his clothing protected him from being burned.

Fernandes testified that he reported most of the incidents to the police, with the exception of the first two, at which time he felt it would have been useless to do so.  He stated that the police never investigated the events (beyond going to the scene of the acid attack), although they took reports (and, in the case of the more general church incident, provided additional security measures).

Fernandes's experiences in 2008 and 2009, some of which resulted in minor or moderate injuries, although disturbing, fall short of persecution.  The attacks could reasonably be viewed as isolated incidents that do not rise to the extreme level of persecution.  See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (noting that isolated incidents that do not result in serious injury are not considered examples of persecution).  The remaining events were verbal threats against Fernandes's life, economic livelihood, and his family's safety.  However, for a threat to constitute persecution it must be more

than sinister and credible; it must be highly imminent and concrete.  See Chavarria, 446

F.3d at 518; Li v. Att'y Gen. of the U.S., 400 F.3d 157, 165 (3d Cir. 2005).  Although

Fernandes was physically attacked on the occasions discussed above, for the most part,

he was able to live in his hometown without issue.  Fernandes continued to participate in

peaceful rallies and church events and to lead a fairly regular life.  Therefore, those

threats apparently were not serious or imminent.  Li, 400 F.3d at 165.

In addition to not showing that he had been persecuted in the past, Fernandes also

failed to show that the SRS continues to be interested in harming him on the basis of his

religion or political opinion.  He claimed his fear of returning to India comes from

hearing news that Christians were being killed.[2]  However, many members of

Fernandes's family, all of whom are Christians, continue to live unharmed in various

parts of India.  Abdille, 242 F.3d at 496 (requiring a showing of country-wide

persecution).

Because he could not meet the requirements for asylum, Fernandes could not

"meet the more stringent applicable standard for withholding of removal."  Yuan v. Att'y

Gen. of the U.S., 642 F.3d 420, 426 (3d Cir. 2011) (citation omitted).  Likewise, the

record supports the BIA's affirmance of the denial of CAT protection, because Fernandes

---

[2] Fernandes provided several articles reporting violence against Christians in India.  The record also shows that, at least in 2010, the Department of State recognized there was some violence against minority religions in India, including Christians.  However, more recent Human Rights Reports about India show that despite some intolerance and intermittent incidents of communal violence, there is no widespread persecution of the Christian minority in India.

5

did not demonstrate that it is more likely than not that he will be tortured by the Indian government, or that they would acquiesce in his torture. <u>Valdiviezo–Galdamez v. Att'y Gen. of the U.S.</u>, 502 F.3d 285, 293 (3d Cir. 2007). In fact, although the police could not be described as proactive in investigating the incidents, they took reports, conducted some investigation at least once, and provided security for his church.

In short, we conclude the BIA did not err in affirming the IJ's order denying Fernandes's applications for relief from removal. Accordingly, we will deny the petition for review.