NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1361
_____

QIANG MA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA No. A098-604-530
(U.S. Immigration Judge: Honorable Charles Honeyman)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 2, 2015

Before:  AMBRO, SCIRICA, and ROTH, *Circuit Judges*.

(Filed October 27, 2015)

_____

OPINION[*]
_____

**SCIRICA**, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Qiang Ma petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). For the reasons detailed below, we will deny the petition for review.

Ma, a citizen of China, was admitted to the United States in 2000 as a temporary visitor for business. In 2005, through counsel, Ma filed an I-140 application to adjust his status, claiming that he had "exceptional ability" as a folk artist. The United States Citizenship and Immigration Services denied the application. In 2007, the Department of Homeland Security charged Ma with removability under 8 U.S.C. § 1227(a)(1)(B) as an alien who had remained in the United States for a longer time than permitted in violation of the law. Ma filed an application for withholding of removal, claiming that he had been persecuted in China due to his opposition to governmental corruption.

An Immigration Judge (IJ) held a hearing in which Ma testified in support of his claim. Ma first disavowed any knowledge of the original I-140 application that had been filed on his behalf, although he admitted to signing the document. He testified that he was not an artist, but instead owned a gold mine in China, which he opened in 1992. The mine prospered for the first two or three years; however, local officials then began to demand that Ma pay bribes to them. Ma said that he could afford to pay these bribes, but because he is against corruption, he refused to do so. In response, these individuals, who controlled the supply of materials that Ma mined for gold, drastically reduced the quantity that he received. Ma complained about this conduct to officials in the city government and then the provincial government, to no avail. He then made plans to seek

2

help in Beijing, but just as he began his journey, the local police arrested him. He was held for over a month, warned that he should not file complaints, and beaten several times, suffering a permanent injury to his finger. At around this same time, because of Ma's conduct, local officials forced his wife to retire from her job. After Ma was released, he remained in China for a year or two, living off his savings and trying to sell his factory. He was unable to do so, and then left for the United States.

The IJ denied relief to Ma on several grounds. First, the IJ concluded that Ma did not testify credibly about his I-140 application. Further, the IJ noted certain other inconsistencies in his testimony, but nevertheless concluded that Ma was generally credible as to his withholding claim. But the IJ ruled that Ma had failed to present evidence to corroborate his allegations that he had problems with the local government, he filed complaints, and his wife was forced to retire. The IJ also found that the harm Ma suffered in China did not rise to the level of persecution, that he was not persecuted "on account of" his political beliefs, and that he would not suffer persecution in the future if he returned to China. Ma appealed to the BIA, which dismissed his appeal. The BIA concluded that Ma had failed to corroborate his claims or show a nexus between the alleged persecution and his political beliefs. Given its resolution of these issues, the BIA determined that it need not address the IJ's other reasons for denying relief. Ma then filed a timely petition for review to this Court.

The government argues that we lack jurisdiction to consider this petition because Ma did not challenge the IJ's corroboration ruling in his appeal to the BIA, and therefore

3

he has not "exhausted administrative remedies available as of right." 8 U.S.C. § 1252(d)(1). Even where the petitioner does not raise an issue before the BIA, however, we have jurisdiction to review such an issue if the BIA considers the unraised issue *sua sponte*. *See Lin v. Att'y Gen.*, 543 F.3d 114, 126 (3d Cir. 2008). Here, the BIA considered whether the IJ reasonably required Ma to provide corroborating evidence, noting, *inter alia*, that "[t]he Immigration Judge properly relied on the respondent's failure to provide a statement from his wife or any other person with knowledge of the events, or available corroboration of his wife's forced retirement." Accordingly, we have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order of removal.

Our review is of the BIA's decision, although we also review the IJ's decision to the extent that the BIA adopted or deferred to the IJ's analysis. *See Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). In cases like this one, where the IJ determines that the alien should produce evidence to corroborate his testimony, "such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). We may not reverse the agency's determination on the availability of corroborating evidence unless we find "that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

We discern no error in the agency's conclusion that Ma failed adequately to corroborate his factual allegations. As an initial matter, he argues at length that, because the agency found that he provided credible testimony, it erred in demanding

corroboration. He is incorrect; it is well established that the agency may require

corroborating evidence even from credible aliens. *See, e.g.*, *Chen v. Gonzales*, 434 F.3d

212, 221 (3d Cir. 2005).

Ma also suggests that the agency failed to conduct the three-part inquiry

established in *Abdulai v. Ashcroft*, 239 F.3d 542 (3d Cir. 2001). Under *Abdulai*, the

agency must: (1) identify the facts for which it is reasonable to expect corroboration; (2)

inquire whether the alien has provided information corroborating those facts; and, if he

has not, (3) analyze whether the applicant has adequately explained his failure to do so.

*Id.* at 554. Again, Ma's argument lacks merit.

First, the IJ continually advised Ma, beginning more than three years before ruling

on his application, that he would be required to corroborate his allegations concerning the

corruption he encountered, his response, and his wife's forced retirement. The agency

recognized that Ma could not be expected to present documents from his alleged

persecutors; however, he did not present even a letter or affidavit from his wife or any

other person who could vouch for his experiences.[1]  *See Sandie v. Att'y Gen.*, 562 F.3d

---

[1]  While Ma submitted four one-page documents concerning his business and an affidavit from a nurse in the United States concerning his finger injury, these documents do not purport to corroborate any of Ma's specific allegations concerning the corruption he faced or his response. Three of the business-related documents merely report that he was the legal representative of a "gold ore sorting" business. The fourth, meanwhile, is a shipping authorization receipt for a five tons of metal ore. As the agency noted, however, this document does not even provide the name of the company that received the ore, and is not sufficient to sustain Ma's burden. *See, e.g.*, *Sandie v. Att'y Gen.*, 562 F.3d 246, 254 (3d Cir. 2009). Likewise, the nurse, in her affidavit, naturally did not provide any information about what had occurred in China.

5

246, 252 (3d Cir. 2009) ("It is reasonable to expect corroboration for testimony that is central to an applicant's claim and easily subject to verification.").

Second, the agency accurately observed that Ma provided no evidence to corroborate any of these allegations. Finally, the agency concluded that he had failed to adequately explain his failure to present corroborating evidence. Indeed, he made little effort to do so. While his attorney stated, at a March 2008 hearing, that "we should be able to get letters and affidavits from China," when Ma was asked at his June 2012 hearing about his failure to obtain evidence from his wife, he said only "[i]f needed there should be document[s]." Therefore, we conclude that the agency properly performed the *Abdulai* analysis.[2] *See, e.g.*, *Chen v. Gonzales*, 434 F.3d 212, 219-20 (3d Cir. 2005).

Accordingly, we will deny the petition for review.

---

[2] In light of this conclusion, we need not reach the BIA's alternate conclusion that Ma was not persecuted "on account of" his political opinion. *See generally Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011).