

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2008

# Forkpa-Bio v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1938

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Forkpa-Bio v. Atty Gen USA" (2008). *2008 Decisions.* Paper 369.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/369

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1938
_____

MULBAH B. FORKPA-BIO,
                                    Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A72-502-971)
Immigration Judge:  Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 10, 2008

Before:  AMBRO, FUENTES and FISHER, <u>Circuit</u> <u>Judges</u>

(Filed: October 14, 2008)
_____

OPINION
_____

PER CURIAM

        Appellant Mulbah B. Forkpa-bio, a native and citizen of Liberia, was admitted to

the United States on or about July 10, 1982 on a non-immigrant B-1 visa.  He overstayed.

About seventeen years later, on July 1, 1999, Forkpa-bio filed an asylum application with the former Immigration and Naturalization Service ("INS"). The INS referred it to an Immigration Judge, and, on July 5, 2000, Forkpa-bio was served with a Notice to Appear ("NTA"), alleging that he was removable under the Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a non-immigrant who remained in the United States for a time longer than permitted. The NTA indicated that Forkpa-bio was to appear on August 29, 2000 at the Immigration Court in Philadelphia, Pennsylvania. He failed to appear and was ordered removed *in absentia*.

Forkpa-bio's removal proceedings subsequently were reopened, and, on February 15, 2005, he appeared before an Immigration Judge at a master calendar hearing, and admitted the factual allegations contained in the Notice to Appear. The IJ thus found him removable as charged. Forkpa-bio expressed a wish to pursue his asylum application, and the IJ questioned him to determine whether he was eligible for any other forms of relief. The IJ determined that he was ineligible for cancellation of removal under 8 U.S.C. § 1229b(b), because he had been separated from his only qualifying relative for five years and could not therefore show hardship to that relative, see 8 U.S.C. § 1229b(b)(1)(D). The IJ also found that legalization under the Immigration and Reform Act of 1986 ("IRCA") was no longer available.[1] The IJ further found that Forkpa-bio was

---

[1] An alien seeking to legalize his status through IRCA must have filed a legalization application between May 5, 1987 and May 4, 1988. 8 U.S.C. § 1255a(a)(1)(A).

not eligible to adjust status in the absence of an approved Form I-130 immigrant visa petition.

On April 12, 2005, Forkpa-bio again appeared before the IJ, and provided a copy of a receipt notice for a Form I-130 filed on his behalf by his United States citizen brother. The IJ continued proceedings for processing of the visa petition, and also recommended that Forkpa-bio seek the assistance of an attorney. Forkpa-bio appeared at his continued master calendar hearing on December 6, 2005, and informed the IJ that his Form I-130 had not been approved. The IJ noted that, even with an approved visa petition, the time to adjust status for siblings of United States citizens was very long.[2] The IJ again encouraged Forkpa-bio to retain counsel.

On November 29, 2006, Forkpa-bio appeared without counsel for his merits hearing. He testified that he fears returning to Liberia because it is not a safe place to live, and government officials or others would be jealous of him due to the time he spent in the United States. He testified that his parents and brother were killed during the civil war in 1993 and his town was burned down. When asked why he did not file an asylum application prior to 1999, he answered that he "never thought of that" because he was married and was unaware of the asylum procedure. A.R. 191-92, 224. Prior to coming to

---

[2]The government notes in its brief on appeal that, for August 2008, immigrant visas are available for siblings of United States citizens whose immigrant visa petitions were filed in September 1997. See U.S. Dep't of State Visa Bulletin (Aug. 2008), available at http://travel.state.gov/visa/frvi/bulletin/bulletin 4310.html.

3

the United States, he was unable to obtain employment with the Liberian government because of his membership in the Belle tribe. A.R. 168-69, 173. The Liberian government is dominated by Americo-Liberians, who discriminate against native Liberians. However, he found employment with "profit institutions." A.R. 169. One of his brothers lives in the United States and his five sisters remain in Liberia. A.R. 176. He did not know the location of four of his brothers. A.R. 176. Additionally, he testified that he feared being robbed upon returning to Liberia because those who are perceived as having money are often the victims of robberies. A.R. 179-83.

The government submitted the 2005 Department of State Report on Human Rights Practices in Liberia, and the 1998 Department of State Profile of Asylum Claims and Country Conditions for Liberia. According to the 1998 Profile, in December 1989, rebel forces led by Charles Taylor campaigned to overthrow President Samuel Doe. President Doe was captured and executed in September 1990, marking the end of constitutional government in Liberia and the beginning of a civil war, which continued until Taylor's inauguration as president of Liberia in August 1997. Fighting resumed in 1999, and continued until 2003. From October 2003 until November 2005, Liberia was governed by the interim National Transitional Government of Liberia ("NTGL"). On November 23, 2005, Ellen Johnson-Sirleaf won the multi-party presidential election. Prior to President Johnson-Sirleaf winning the election, the NTGL was considered to have generally respected the human rights of its citizens, although problems persisted in some areas,

including deaths from mob violence, police abuse and harassment, and harsh prison conditions. In 2005, unlike previous years, rebel combatants no longer retained control of rural areas and civilian authorities generally maintained effective control over rural areas. Civilian authorities generally maintained effective control over security forces.

At the conclusion of the merits hearing, the IJ issued an oral decision, denying Forkpa-bio's applications for asylum, withholding of removal, and protection under the Convention Against Torture. The asylum application was denied as untimely, and the IJ found that Forkpa-bio did not establish exceptional or changed circumstances to excuse his failure to file his asylum application by April 1, 1998. 8 C.F.R. § 1208.4(a)(2) (requiring that an asylum applicant file his application within the one year of his arrival in the United States or April 1, 1997, whichever is later).[3]

The IJ further found that Forkpa-bio failed to establish a clear probability that he would be harmed on account of a protected ground if he were to return to Liberia. The IJ noted that Forkpa-bio described some discrimination in the form of failing to obtain government employment on account of his ethnicity, and that he claimed to fear future persecution due to his speculation that Liberians would be suspicious of his residence in the United States, but these allegations did not rise to the level of persecution. The IJ

---

[3]If the alien can establish "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application," failure to file the application by the relevant deadline may be excused. 8 U.S.C. § 1158(a)(2)(D).

acknowledged that Forkpa-bio credibly described a high prevalence of crime in Liberia, but she determined that this was not a basis for the relief of withholding of removal. With respect to his Convention Against Torture claim, the IJ found that Forkpa-bio failed to establish that he more likely than not would be tortured upon his return to Liberia. The IJ ruled that Forkpa-bio was eligible for voluntary departure, and issued an alternate order of removal to Liberia.

Forkpa-bio appealed the IJ's decision to the Board of Immigration Appeals, and on March 4, 2008, the Board adopted and affirmed the IJ's decision, citing Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994) (Board may adopt or affirm decision of immigration judge, in whole or in part, when it is in agreement with reasoning and result of that decision). The Board agreed that Forkpa-bio did not present exceptional circumstances sufficient to overcome his failure to timely file his asylum application, and that he was not eligible for withholding of removal or protection under the Convention Against Torture.

Instead of filing a petition for review with this Court, Forkpa-bio attempted to seek review of the Board's March 4, 2008 decision by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Eastern District

of Pennsylvania on March 21, 2008 (at D.C. Civ. No. 08-cv-01384).  The District Court transferred the habeas corpus petition to this Court pursuant to 28 U.S.C. § 1631.[4]

We will deny the petition for review.  We have jurisdiction generally to review final orders of removal under 8 U.S.C. § 1252(a)(1).  However, because Forkpa-bio failed to present a constitutional claim or question of law, we lack jurisdiction to review the Board's finding that he did not timely file his asylum application.  The INA precludes judicial review of the Board's determination regarding the one-year filing deadline and whether extraordinary circumstances exist to excuse the filing delay.  8 U.S.C. § 1158(a)(3); see also Sukwanputra v. Gonzales, 434 F.3d 627, 633 (3d Cir. 2006) (judicial review bar of section 1158(a)(3) does not violate Due Process Clause).  Despite this bar to review, we retain jurisdiction to review questions of law and constitutional issues regarding the application of 8 U.S.C. § 1158(a)(2).  Jarbough v. U.S. Attorney General, 483 F.3d 184, 190 (3d Cir. 2007); 8 U.S.C. § 1252(a)(2)(D).  Although Forkpa-bio claims in his opening brief on appeal that the denial of asylum violated his Equal Protection and Due Process rights, we find the argument insufficient to invoke our jurisdiction.  Jarbough, 483 F.3d at 190 (argument that IJ simply reached wrong outcome is not properly viewed as constitutional challenge).

---

[4]We find this transfer proper insofar as Forkpa-bio filed his habeas corpus petition within thirty days of the Board's decision.  See 28 U.S.C. § 1631; see also 8 U.S.C. § 1252(b)(1).

Turning to the issues over which we have jurisdiction, where, as here, the Board adopts and affirms the opinion of the IJ, we review the IJ's decision. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The IJ's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." The standard is more exacting than the asylum standard and requires the alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407, 412 (1984); see also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component).

An applicant for withholding of removal may establish that his life or freedom would be threatened upon his return to the proposed country of removal either by demonstrating that he suffered past persecution in that country on account of a protected ground or that he more likely than not would suffer future persecution in that country on account of a protected ground. 8 C.F.R. § 1208.16(b)(1), (2). Persecution is defined as

8

"threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. U.S. Attorney General, 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It "refers only to severe conduct and does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id.

The record in this case does not compel a finding of past persecution. Non-severe economic discrimination of the kind noted by the IJ here does not rise to the level of persecution, see In re: T-Z-, 24 I. & N. Dec. 163, 171-74 (BIA 2007), and an allegation of prospective incidents of random violence does not establish persecution on account of a protected characteristic. See Konan v. U.S. Attorney General, 432 F.3d 497, 506 (3d Cir. 2005) (general conditions of civil unrest or chronic violence and lawlessness do not generally amount to persecution). The IJ dismissed Forkpa-bio's testimony about his fear of future persecution by Taylor forces lying in wait, appropriately relying on the 2005 Country Report which specifically rebuts this testimony. The death of Forkpa-bio's parents during the 1993 civil war in Liberia is tragic, but does not demonstrate that it is now more likely than not that he will be singled out for persecution on account of a protected ground. The Country Report reflects that the civil war ended in 2003, and conditions have improved since that time. Further, Forkpa-bio produced insufficient evidence that he would be targeted for mistreatment on account of his ties to the United

9

States or any protected ground. The 1998 Profile notes that thousands of Liberians, including President Johnson-Sirleaf, have lived and studied in the United States.

To establish a basis for relief under the Convention Against Torture, the alien must establish that it is more likely than not that he would be tortured if returned to the country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment. . . ." 8 C.F.R. § 1208.18(a)(2). The IJ concluded that Forkpa-bio did not meet his burden of establishing that it is more likely than not that he would be tortured upon his return to Liberia, 8 C.F.R. §§ 1208.16, 1208.18, and we conclude that the record does not compel a different conclusion.

Finally, to the extent that Forkpa-bio argues that he is eligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h) or former 8 U.S.C. § 1182(c), he failed to exhaust these issues before the IJ or on appeal to the Board, and thus we lack jurisdiction to consider these claims. See 8 U.S.C. § 1252(d)(1); Zheng v. Gonzales, 422 F.3d 98, 107-08 (3d Cir. 2005).

For the foregoing reasons, we will deny the petition for review.