**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1573
_____

HENRY PRATT, A/K/A Mohamed Camara, A/K/A Mohammed Camara,
A/K/A Mohamed Carara, A/K/A Papi Pratt,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A075-555-747)
Immigration Judge: Ramin Rastegar
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2018

Before: KRAUSE, COWEN, FUENTES, *Circuit Judges*

(Filed: July 11, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent

FUENTES, *Circuit Judge*.

Henry Pratt petitions for review of a Board of Immigration Appeals decision denying his applications for withholding of removal and cancellation of removal. Because Pratt has failed to identify a prejudicial error on appeal, we will deny his petition.

## I.

Henry Pratt is a 46-year-old Liberian national and lawful permanent resident. He arrived in the United States in 1997 and previously received asylum in 2002 on grounds related to the then-ongoing Liberian civil war. In 2015, Pratt was convicted of Pennsylvania state forgery and access device fraud charges. Because of those convictions, the Department of Homeland Security placed Pratt in removal proceedings. An immigration judge sustained the removal charges against him in July 2017. Pratt subsequently applied for cancellation of removal, asylum, withholding of removal, and relief under the Convention Against Torture. Pratt claimed asylum and withholding of removal on multiple grounds.

The immigration judge denied all of Pratt's applications. The judge found that Pratt was statutorily eligible for cancellation of removal, but denied Pratt's application as a matter of discretion. The immigration judge also pretermitted his new asylum application as a matter of discretion. As for withholding of removal, the immigration judge concluded that Pratt had not established membership in a cognizable particular social group. Finally, the immigration judge denied Pratt's request for relief under the Convention Against

Torture.  Pratt appealed to the Board of Immigration Appeals, which upheld the immigration judge's decision.   Pratt timely petitioned this Court for review.[1]

## II.

On appeal,[2] Pratt brings three issues before the Court:  (1) whether the Board erred in rejecting Pratt's proposed social groups; (2) whether the Board erred in finding Pratt had not provided sufficient corroborating evidence without giving him notice of what corroboration was expected; and (3) whether the Board's denial of Pratt's application of cancellation of removal was contrary to law.[3]  The Court reviews issues of law *de novo*,[4] and reviews the Board's findings of fact for substantial evidence.[5]  Finally, the Court

---

[1] The Court has jurisdiction over Pratt's petition for review under 8 U.S.C. § 1252(a)(1). Both parties filed motions to file briefs out of time, although only the Board's still remains open.  *See* 6/15/18 Respondent's Motion For Leave to File Answering Brief Out of Time.  As the Board has shown good cause for its motion, it will be granted.  Pratt's Response, including a request to preclude the Board from oral argument, will be denied as moot.  *See* 6/19/18 Petitioner's Reply to Respondent's Motion.

[2] The Court reviews the Board's decision.  To the extent the Board affirms and refers to the immigration court's decision, the Court reviews that decision as well.  *See Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011).

[3] Before the immigration judge, Pratt also brought applications for withholding of removal based on political opinion, and relief under the Convention Against Torture, both of which the immigration judge denied.  The immigration judge further held that changed country conditions rebutted the presumption that he faced further persecution on account of his political opinion, the grounds upon which Pratt first received asylum in 2002. Pratt has not appealed these issues to the Court.  Pratt has also not appealed the immigration judge's decision to pretermit his second asylum claim.  The Court therefore considers all arguments as to these issues waived and does not address them here.

[4] *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005).

[5] *Yuan*, 642 F.3d at 425.

3

reviews denials of cancellation of removal for "constitutional claims or questions of law."[6] The Court proceeds with each issue in turn.

Individuals may seek withholding of removal on the grounds that they can demonstrate it is more likely than not that their life or freedom would be threatened on account of, *inter alia*, their membership in a particular social group.[7] The Board currently requires petitioners to satisfy three requirements to show a cognizable social group: (1) the group members must show an immutable characteristic; (2) the group must be defined with particularity, with discrete and definable boundaries; and (3) the group must be "socially distinct," which requires evidence that larger society recognizes the group in some way.[8]

Pratt asserted protection under several different proposed social groups. The first group Pratt proposes is "Liberians removed from the United States." The Board contests whether Pratt actually proposed this group during the administrative proceedings. It argues that, on appeal to the Board, Pratt proposed "individuals returning to Liberia from the United States." It was this second proposed social group that the Board analyzed in its decision. The difference is significant: Under the Board's categorization, the group would presumably comprise any Liberian returning to Liberia, under any circumstances. Pratt's

---

[6] *Patel v. Att'y Gen.*, 619 F.3d 230, 232 (3d Cir. 2010); *see also* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D).
[7] *See* 8 U.S.C. § 1231(b)(3)(A); *Li v. Att'y Gen. of the United States*, 400 F.3d 157, 162 (3d Cir. 2005).
[8] *Matter of W-G-R-*, 26 I&N Dec. 208, 212 (BIA 2014); *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *see also S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018).

4

group includes only those removed—i.e., deported—back to Liberia. One can imagine a scenario where an individual deported back to Liberia was treated differently than one who returned of his own accord. And in fact, on appeal to the Board, Pratt submitted a newspaper article suggesting that removed individuals are treated differently in Liberia.

The Board argues that, to the extent Pratt did mean "removed individuals," he failed meet his obligation to define his proposed group clearly. The record does not bear this out. Pratt testified that he feared return to Liberia as a removed individual; he submitted documentary evidence on appeal supporting the idea that removed individuals face persecution in Liberia, and the immigration judge's decision defines the group as "Liberian nationals who are removed from the United States." Pratt also defined his proposed group in his appeal brief to the Board as "Liberians removed from the United States." Certainly, if anyone is well-situated to understand the difference between a "returning" individual and a "removed" individual, it is the Board of Immigration Appeals.

Regardless, the Board's failure to adequately analyze Pratt's proposed social group is harmless.[9] Pratt must present evidence in support of his proposed group to the immigration judge.[10] That evidence must support the assertion that it is more likely than not that his life or freedom would be threatened on account of his membership in that group.[11]

---

[9] *See Yuan*, 642 F.3d at 427 (applying harmless error review to immigration proceedings).
[10] 8 C.F.R. § 1003.1(d)(3)(iv).
[11] *See Li*, 400 F.3d at 162.

Pratt failed to do that. While he did testify that he feared return as a removed individual, he provided limited evidence supporting this proposed group before the immigration judge. His primary supporting evidence comes from the affidavit of his former neighbor, who stated that "[a]s an American Liberian, a descendent of former slaves, and a returned refugee, Mr. Pratt is without tribal or family affiliations to protect him and would likely suffer death or serious bodily injury if he is returned to Liberia." While this statement supports many possible social groups, it does not say anything about the risk to Pratt as a "removed" individual. Just as the Board cannot read "removed" out of Pratt's submissions where it is there, Pratt cannot read "removed" into his evidence where it is not there.

Therefore, Pratt's only support for this proposed group is his own testimony that he fears returning as a removed individual. That, without more, is insufficient to establish that Liberian society views his proposed group as socially distinct. He has simply testified to his fear, and Pratt did not submit evidence or testimony to the immigration judge that showed Liberian society views removed individuals as socially distinct. While he did submit supporting documentary evidence on appeal, that was too late; Pratt was obligated to present that evidence to the immigration judge.[12] Because Pratt did not meet his evidentiary burden, any error on the Board's part is harmless.

Because the Court has concluded that the accurate formulation of Pratt's proposed group was "Liberians removed from the United States," it need not evaluate the Board's

---

[12] 8 C.F.R. § 1003.1(d)(3)(iv)("[T]he Board will not engage in factfinding in the course of deciding appeals.").

alternate reading, which was "Liberians returning from the United States." Even if that were the correct formulation, however, the Court cannot say that the Board erred in denying Pratt's appeal. Pratt's neighbor's affidavit does suggest that as a "returned refugee" he would be without protection, but neither that statement nor Pratt's own testimony present evidence that Liberians returning from the United States are viewed as socially distinct by Liberian society, or that a person's past presence in the United States makes them a target for persecution in Liberia. That an individual lacks protection does not necessarily mean that he would be viewed by society as socially distinct. Pratt's lack of evidentiary and testimonial support precludes this proposed group as well.

The final possible category is "American Liberians." The definition of this group is, like the other categories, open to question. To the extent that "American Liberians" is simply another way of stating "Liberians returning from America," the Court has already addressed it.

That said, anyone with a passing knowledge of Liberian history knows that it was founded by emancipated American slaves, and that the descendants of those individuals continue to play a distinct role in Liberian society. The Board has recognized, at least obliquely, that American Liberians, also known as Americo-Liberians, could be a cognizable social group.[13]

Unfortunately, Pratt did not preserve this proposed group when he appealed to the Board. In his brief to the Board, the only proposed group he identified was "Liberians

---

[13] *See Forkpa-bio v. Att'y Gen.*, 296 F. App'x 239 (3d. Cir. 2008); *Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997).

removed from the United States." He did not propose any group that could be construed as "Americo-Liberians." Pratt has therefore not exhausted his administrative remedies with respect to his proposed "Americo-Liberians" social group. The Court cannot consider it here.[14] Therefore, the Court has found no prejudicial error on the Board's part as regards Pratt's proposed social groups.

Pratt argues that he should have had an opportunity to submit corroborating information, as required under *Abdulai v. Ashcroft*,[15] and our more recent ruling in *Saravia v. Attorney General*.[16] However, this is not a situation in which *Abdulai* and *Saravia* apply. The agency did not fail to give Pratt an opportunity to submit "documentary evidence corroborating the specifics of [his] testimony."[17] Pratt's testimony itself failed to meet the requirements necessary to show particularity or social distinction. The immigration judge did not rule against Pratt because the weight of evidence was against Pratt, but because the record was "devoid of any evidence." There was nothing to corroborate. Therefore, *Abdulai* and *Saravia* are inapposite here.

Finally, the Court considers whether the Board inappropriately denied Pratt's request for cancellation of removal. The Court only has jurisdiction to review these denials

---

[14] *See Bonhometre v. Gonzales*, 414 F.3d 442, 447-48 (3d Cir. 2005)("As a general rule, an alien must exhaust all administrative remedies available to him as of right before the [Board] as a prerequisite to raising a claim before [the Court]."); 8 U.S.C. § 1252(d)(1) (requiring administrative exhaustion of claims).

[15] *Abdulai v. Ashcroft*, 239 F.3d 542, 546 (3d Cir. 2001).

[16] *Saravia v. Att'y Gen.*, 905 F.3d 729, 738 (3d Cir. 2018). *Saravia* was decided after the parties in this case completed their briefs.

[17] *Abdulai*, 239 F.3d at 547.

for "constitutional claims or questions of law."[18] Here, Pratt argues that the Board failed to give him a presumption of credibility on appeal, which would constitute a legal question. As the Board acknowledged in its decision, the immigration judge "did not render an explicit adverse credibility determination." Despite that fact, the Board referenced "the respondent's lack of credibility" as a factor justifying the denial of cancellation of removal. Pratt argues that, because the immigration judge did not make an express adverse credibility determination, he was entitled to a presumption of credibility on appeal to the Board.[19] The Board, in contrast, argues that Pratt was not entitled to a presumption of credibility, and, even if he was, he suffered no prejudice as a result of the Board's error. The Board asserts that there are no "magic words" an immigration judge must use to make an adverse credibility determination, and that the Court should see the immigration judge's actions as an implicit, "partial adverse credibility finding."

Pratt was owed a presumption of credibility on appeal. Section 1229a(c)(4)(C) states that "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." The Board makes no attempt to square the language of § 1229a(c)(4)(C) with its statement below that the immigration judge "did not render an explicit adverse credibility determination."[20] Once the Board reached that conclusion, § 1229a(c)(4)(C) required it to afford Pratt a

---

[18] *Patel*, 619 F.3d at 232.

[19] *See* 8 U.S.C. § 1229a(c)(4)(C) ("[I]f no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.").

[20] Decision of the Board of Immigration Appeals, CAR 4 n.1.

presumption of credibility. While the Board is correct that an immigration judge need not utter specific "magic words" to make an adverse credibility determination, the immigration judge's decision to make an adverse finding must be cognizable.[21] The Court cannot be left to guess which parts reflect an unspoken adverse credibility finding and which do not. It would defeat the whole purpose of the determination in the first place, as well as the requirements of § 1229a(c)(4)(C).

Regardless, in this instance, the Board's failure to accord Pratt a presumption of credibility was harmless. Pratt has several convictions for fraud, forgery, and theft. He also continued to use a false identity long after he fled Liberia and resettled into the United States. Those negative factors could serve as the basis for a discretionary denial of Pratt's motion, even if the Board on appeal accepted Pratt's testimony regarding them as credible. It is therefore "highly probable" that the Board's error, which merely affirmed the immigration judge's decision to decline discretionary cancellation of removal, did not affect the outcome of the case.[22]

### III.

For the foregoing reasons, we will deny Pratt's petition for review.

---

[21] *See Alimbaev*, 872 F.3d 188, 199 (3d Cir. 2017) (holding that where immigration judge found refuting testimony "credible," the judge necessarily made an implicit adverse credibility finding as to the refuted testimony).
[22] *Yuan*, 642 F.3d at 427.